## WASH MASON v. THE STATE.

*No. 7024. Decided June 21.*

1. **Indictment—Duplicity.**—It is not a valid objection to an indictment that it charges separate and distinct offenses in several counts, even when the offenses charged are felonies, if they be of the same character, differing only in degree.

2. **Kidnapping—Abduction.**—The defensive testimony on a trial under an indictment charging kidnapping and abduction in different counts tended to show that when the accused took the female from her home he was mistaken as to her age; that he believed her to be over the age of 17 years; that such mistake of fact, if a mistake, did not arise from want of proper care on the part of the accused, and that the female went with him voluntarily. *Held*, that, such proof being true, the accused would not be guilty in any degree either of kidnapping or abduction. See the statement of the case for a charge of the court on the issue *held* erroneous; and the same for a special instruction which, under the proof, was erroneously refused.

3. **Same—Accomplice Testimony.**—Under the proof in this case the trial court did not err in refusing to instruct the jury upon accomplice testimony, because if when taken away from home by the accused the female was under 15 years of age, she could not be an accomplice to kidnapping; if she was under 14 years of age, she could not be an accomplice to abduction, and if she was over 15 years of age, and consented to be taken away from her home, then in taking her away the accused would be guilty of no offense whatever.

4. **Abduction—Fact Case.**—See the statement of the case for the substance of evidence *held* insufficient to support a conviction for simple abduction because it preponderates to show that the female was over the age of 15 years when taken away by the accused, and that she consented to be taken away.

5. **Same.**—Under an indictment of different counts which charged felonious and simple kidnapping, and felonious and simple abduction, the accused was convicted of simple abduction. *Held*, that such conviction bars further prosecution for kidnapping and for felonious abduction.

Appeal from the District Court of Falls.    Tried below before Hon. J. R. Dickenson.

The conviction in this case was for the simple abduction of Sissie Bonner, and the penalty assessed against the appellant was a fine of $100.

Sissie Bonner was the first witness for the State.    She testified, in substance, that she was 13 years of age at the time of this offense, which was committed on the night of January 10, 1889.    She was the daughter of Biddie Johnson, at present the wife of Henry Johnson.    In 1888 she lived at the house of her mother and stepfather, in Falls County.    She first met and became acquainted with the defendant while picking cotton in Falls County in 1888.    Her acquaintance with defendant, however, was slight up to the night of January 10, 1889.    Early on that night the witness left the sitting room of her stepfather and went into the yard at the rear of the house to answer a call of nature.    When she had relieved herself, had got up, and was arranging her clothes, she was accosted by the defendant, whom she had not previously seen on that night.    Defendant threatened witness, holding a large stick in his hand, and ordered her to follow him.    He caught her by an arm and pulled her along with him.    Witness was too much frightened to make an outcry.    Defendant and witness, the former dragging witness by an arm, ran through the cotton patch to the big road, and thence walked to the town of Marlin, seven or eight miles distant.    While going through the woods the witness heard her mother calling her, but made no reply, as she feared injury from the defendant.    The defendant threw away the stick at a bridge on the suburbs of Marlin.    He then took witness to the house of a colored woman in Marlin, where they remained over night.    On the next morning defendant took witness to the house of Lucy Payne, a negress, in the Brazos bottom.    They remained at that house several days and nights, sleeping together every night but one.    Defendant on one occasion left the witness at Lucy Payne's for the space of four hours, and went to the river.    During that time witness asked Lucy Payne to let one of her children go with and show her the way to Rickelman's farm, whence she could get home.    Lucy agreed, but the return of the defendant defeated the project.    Soon afterwards witness and defendant left Lucy Payne's, and on the road met deputy sheriff James Marlin, with whom she cheerfully went to Marlin, where she met her stepfather, Henry Johnson.    On meeting Marlin defendant asked witness if she wanted to go on with him or return with Marlin.    Witness replied that she would go back with Marlin.    Defendant then told her to go with Marlin, and to tell the truth about the going away from home.

On her cross-examination the witness declared that she had no engagement to meet defendant on the night of the abduction.    She did not expect to see him when she went into the yard and did not know he was on the premises.    She denied that she ever told defendant or any other per-

son that her stepfather was cohabiting with her against her will, and that she wanted to leave his house and go to her own father, Ike Bonner, in Robertson County. She admitted that she had frequent carnal intercourse with defendant while at Lucy Payne's house, and declared that she was now pregnant by him. She had never had carnal knowledge of any man save defendant, and had never given birth to a child in Ellis County or elsewhere.

Biddie Johnson testified for the State that she was the mother of Sissie Bonner and the wife of Henry Johnson. She could not designate the year of Sissie's birth. Witness began having babies five years after freedom. Thenceforward she gave birth to a baby every year for three years, then skipped a year, and the next year gave birth to Sissie, Ike Bonner being the father. On the night of January 10, 1889, Sissie left the sitting room for the purpose, she said, of answering a call of nature. After waiting some time for her return the witness went to the back door and called her, but got no reply. She then heard some parties running through the cotton stalks and told her husband that Sissie had gone. Six days elapsed before the witness next saw Sissie. Her feet were then swollen, and she complained of soreness of the womb.

Cross-examined the witness said that Sissie lived with her and Henry Johnson in Ellis County in 1887. They lived on Mr. Hancock's place. Sissie was not pregnant at any time during 1887, and had never given birth to a child. Witness had lived on Mr. Hepti's place in Robertson county.

Testifying for the State, Henry Johnson described the disappearance of Sissie substantially as did the witness Biddie Johnson. Witness thought at first that Sissie had run off with one Will Shields, but soon became satisfied that defendant was the man who had her. On the morning after the girl's disappearance, the witness went to Marlin, reported the matter to the police, and offered a reward of $20 for the recovery of the girl. Jane and Mack Bogan were at witness's house when Sissie left. Witness tried to borrow Mack Bogan's horse to go in search of the girl, but did not offer Mack any money to go to the church to see if Sissie was there with Will Shields. Witness, his wife, and Sissie lived on Mr. Hancock's place in Ellis County in 1887. Witness was not always at home during that year, but never remained away longer than two weeks at a time. If Sissie was sick, or was pregnant, or gave birth to a child on Hancock's place during the year 1887, the witness did not know it. She may have had a baby during that year, but if so the witness never saw or heard of it.

Lucy Payne testified for the State that defendant and Sissie Bonner came to her house in the Brazos bottom in January, 1889. They claimed to be man and wife, and acted like man and wife, sleeping together every night save one while at witness's house. Sissie appeared cheerful, and frequently sat in defendant's lap. Defendant was uniformly kind and

attentive to the girl.    She, Sissie, cried once or twice, and said that she wanted to go home, and finally left witness's place with defendant.

James Marlin testified for the State that during the month of January, 1889, he overtook defendant and Sissie walking along the public road near Perry, in Falls County.    Knowing that Henry Johnson had offered a reward for the recovery of the girl, he accosted them, and told Sissie she must accompany him to town.    Sissie willingly agreed, and to the objection of defendant, who insisted that she should go on with him, Sissie declared that he, defendant, could no longer control her movements.    Witness then told defendant that he had no papers for him, but wanted the girl.    Defendant replied that he wanted "no truck" with witness, and told Sissie to go with witness, but to tell the truth about the matter.    The witness then took the girl to Marlin and delivered her to Henry Johnson.    Sissie was a well grown and well developed young woman, but witness did not know her age.    The State rested.

Mack Bogan was the first witness for the defense.    He testified, in substance, that he and his mother lived in the house of Henry Johnson at the time of the alleged offense.    The witness had worked at cotton picking with Sissis Bonner, defendant and Will Shields in Jones's field. He knew as a fact that a criminal intimacy existed between Sissie and Will Shields prior to the flight of the former with the defendant.    He often saw Sissie and defendant in earnest private conversation after Shields left the place.    On the evening of January 10, 1889, Sissie, in the hearing of the witness, told the witness's mother that she was being kept by her stepfather, with her mother's knowledge and consent; that she could stand it no longer, and she was going to run away; that the defendant had promised to take her to her father in Robertson County, and that if arrangements could be completed they intended to run away that very night.    In the same conversation she told the witness's mother that she, Sissie, was a grown woman, quite 18 years old, and that in the previous year she gave birth to a male child in Ellis County.    Before the close of this conversation the defendant came up, and in the hearing of the witness and the defendant Sissie again said that she was 18 years old and had been the mother of a child, and again spoke of being kept by her stepfather.    It was then agreed by defendant and Sissie that they would meet that night in the cotton patch behind the house; that they would go away together, and that defendant would take care of Sissie until he could get the money to take her to her father in Robertson County.    Sissie left the house under the circumstances stated by the State witnesses.    Soon afterwards, about the time Biddie stepped to the door and called the girl, the witness heard some parties running through the cotton stalks.    Henry Johnson then proposed to pay witness for the use of his horse on which to pursue Sissie. . Witness refused to let him have the horse, and he then proposed to pay witness to go to the church and see if Sissie and Shields

were there together. The witness went, but of course did not find the parties, and was never paid by Johnson.

Jane Bogan testified, in substance, for the defense as did the witness Mack Bogan, and in addition that Sissie Bonner was a well grown, well developed young woman when she left Henry Johnson's house with the defendant.

P. L. Hancock testified for the defense, in substance, that Henry Johnson, his wife Biddie, and Sissie Bonner lived on his, witness's, father's place near Palmer, Ellis County, during the year 1887. Sissie was then as large and as fully developed as she was at the time of this trial. Soon after she removed to the witness's father's place the witness observed about her what he took to be unmistakable indications of pregnancy. Her stomach was much distended and swollen, and she looked like a woman heavy with child. She was finally taken sick, and was attended professionally by Dr. May, a physician, now absent from the State. Her sickness was followed by a burial, and it was generally understood and currently reported that the person buried was a child born to Sissie Bonner. Her figure presented no appearance of pregnancy when she left her bed and resumed work.

Adam Hepti testified for the defense that Biddie Johnson and Sissie worked on his farm in 1878. At that time Sissie was at least six or seven years old.

The defendant testified in his own behalf that he met and became acquainted with Sissie Bonner on Jones's farm, in Falls County, in 1888. Sissie frequently told witness that she was 18 years old, and that she had given birth to a boy baby in Ellis County. She then had the appearance of a grown woman, and the witness accepted her statements, believing them to be true. A short while before the alleged offense Sissie told the witness that her stepfather was keeping her, and that she thought it very wrong for her to live in concubinage with her stepfather. Witness advised her to tell her mother about her stepfather subjecting her to his passions. She replied that her mother was well aware of the fact, but would not interpose for fear her husband would leave her if she did. She then begged the witness to take her away from her stepfather's house, and to the house of her own father in Robertson County. Witness replied to this appeal that he had no money with which to defray her expenses. She then told witness that she would help him earn the money, living with him meanwhile as his wife. Witness finally consented to take Sissie away and to finally send her to her father. On the evening of January 10, 1889, it was agreed between witness and Sissie to meet that night in the cotton patch behind Henry Johnson's house, and run away. They discussed the matter in the presence of Jane and Mack Bogan. According to this agreement witness and Sissie met early on that night in the cotton patch. Sissie seized witness's arm and urged him into a run. They went to Marlin and

put up at a colored woman's house. They slept together that night upon the suggestion of Sissie, and had carnal connection. They afterwards had frequent carnal intercourse, sleeping together at night. Witness experienced no difficulty in penetrating Sissie's copulative organ with his male member, and she never complained of pain attending the operation. Sissie never expressed to the witness a desire to return to her mother. She and witness were hunting work whereby to obtain money on which to go to Robertson County when they met deputy sheriff Marlin. Witness followed the deputy sheriff and Sissie into town, and was in town when arrested.

The eleventh paragraph of the charge of the court referred to in the second head note of this report reads as follows: "If defendant took said Sissie from her mother for the purpose of prostitution, it would not justify him because he believed, if he did so, that she was over 14 years of age, or grown, if in fact she was under that age; but if defendant took said Sissie Bonner from her mother, not for the purpose of prostitution, but in order to carry her to her father, he would not be guilty of abduction, although he afterwards conceived and carried out the intention of prostituting her. The taking her must have been for the purpose of prostitution."

The special instruction requested by the defendant, and referred to in the second head note, reads as follows: "No mistake of law excuses one committing an offense, but if a person laboring under a mistake as to a particular fact should do an act which would otherwise be criminal, he is guilty of no offense."

*B. H. Rice*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

WILLSON, JUDGE.— There are four counts in the indictment, two charging the offense of kidnapping and two the offense of abduction of a female for the purpose of prostitution. Defendant excepted to the indictment because it charged separate and distinct felonies. His exception was overruled, and he was tried upon all the counts and convicted of simple abduction; that is, that character of abduction which is punishable by fine only.

Kidnapping and abduction are unquestionably separate and distinct offenses. Their elements are not the same, and the punishments prescribed are different. They are, however, as charged in this instance, offenses of the same character. Penal Code, arts. 521, 527.

It is the rule of the common law, which rule has been followed in numerous decisions in this State, that it is not a valid objection to an indictment that it charges separate and distinct offenses in several counts, even where the offenses charged are felonies, if they be of the same character,

differing only in degree. The State v. Dorsett, 21 Texas, 656; Weathersby v. The State, 1 Texas Ct. App., 643; Waddell v. The State, 1 Texas Ct. App., 720; Barnwell v. The State, 1 Texas Ct. App., 745; Irving v. The State, 8 Texas Ct. App., 46; Mathews v. The State, 10 Texas Ct. App., 279; Boles v. The State, 13 Texas Ct. App., 650; Dovalina v. The State, 14 Texas Ct. App., 312; Bean v. The State, 17 Texas Ct. App., 60; Shubert v. The State, 20 Texas Ct. App., 320; Chester v. The State, 23 Texas Ct. App., 577; Keeler v. The State, 15 Texas Ct. App., 111. It was not error to overrule the exception to the indictment.

Instead of the eleventh paragraph of the charge we think the first special instruction requested by the defendant should have been given. If the defendant at the time he took the girl away from her home was mistaken as to her age, believing her to be over 17 years of age, and if such mistake did not arise from a want of proper care on his part, and if the girl went with him voluntarily, he would not be guilty of either of the offenses charged in the indictment. There was evidence which demanded the instructions requested, and such instructions were correct in law. Penal Code, arts. 45, 46.

It was not error to omit to charge the law as to accomplice testimony. If the girl charged to have been kidnapped was under 15 years of age she could not be an accomplice to the offense. If she was under 14 years of age she could not be accomplice to abduction. If she was over 15 years of age and consented to being taken away from her home by the defendant, no offense was committed by the defendant in taking her away. So, under no state of facts, could the girl be regarded as an accomplice within the meaning of the statute relating to accomplice testimony.

But we are of the opinion that if there was no error in refusing the special instruction as to mistake requested by the defendant, the conviction should be set aside because of the unsatisfactory, uncertain, and insufficient character of the testimony upon which it is based. There is no positive evidence, except that of the girl, as to her age at the time she was taken away by the defendant. She testified that she was at that time 13 years old. On the other hand, it was proved that before the alleged offense she told the defendant that she was 18 years old, was a woman grown, and had been the mother of a child. There was other evidence tending strongly to show that at the time of her alleged abduction she was more than 15 years of age. We think the evidence preponderates that she was over that age. If she was over said age and consented to go with defendant, he is not guilty as charged. That she did consent to go with him and to remain with him for several days, having sexual intercourse with him, is, we think, clearly established by the evidence, notwithstanding her denial that she went with him voluntarily, but was forced by him to do so.

We think the effect of the verdict finding defendant guilty of simple

abduction is to bar any further prosecution against him upon the charge of kidnapping and upon the charge of felonious abduction. If tried again he should be tried only for the offense of which he has been convicted.

Because the court erred in refusing said special instruction, and because of the insufficiency of the evidence, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Judges all present and concurring.