### 3718.   HENDON v. THE STATE.

In prosecutions under section 110 of the Penal Code (1910), for the inveigling of a child, it is necessary for the State to show that the accused either "forcibly, maliciously, or fraudulently" enticed or carried the child away.   Where the child alleged to have been inveigled is above the age of discretion, though under the age of 18, these elements are not sufficiently made out by showing that the child went away in company with the defendant, especially where the State's own evidence shows that the child went of its own free will and accord, and not as the result of any inveigling on the defendant's part.

DECIDED NOVEMBER 7, 1911.

Indictment for inveigling child; from Cobb superior court—Judge Morris.   September 9, 1911.

*Clay & Morris,* for plaintiff in error.

*J. P. Brooke, solicitor-general,* contra.

POWELL, J.   This case presents about the most horrible and disgusting record we have been called upon to review since our service upon this bench began.   Its disgusting details are utterly contrary to all that we are accustomed to.   We have considered the case carefully.   The record contains many exceptions to rulings of the court and to instructions to the jury, but none of these are well taken.   The case was fairly and ably tried.   We are always reluctant to set aside a verdict deliberately returned by a jury and approved by a court, on the ground that there is no evidence to support it, and are especially reluctant to do so where the record

is otherwise so free from error as the one before us. But we have read this record over and over again, and the evidence is wholly insufficient to support the conviction.

The accused was charged with a violation of Penal Code (1910), § 110, which provides: "Any person who forcibly, maliciously, or fraudulently leads, takes, or carries away, or decoys or entices away, any child under the age of eighteen years from its parent or guardian, or against his will, or without his consent, is guilty of kidnapping." The child alleged to have been inveigled was a girl about 17 years old, the daughter of a poor white farmer who lived in the country between Marietta and Atlanta. He had, as a farm hand, a negro boy, who slept in a shed-room in his house. This girl and the negro boy worked together in the field, and in some way, not disclosed by the record, he managed to become criminally intimate with her. One night, after she was somewhat advanced in pregnancy, her father missed her from home. He tracked her to a spot at a branch near by, and found that she was there joined by another woman, and then both were tracked to a point on the street-car line between Marietta and Atlanta. It was shown that the other track was that of the defendant in this case, who was a sister of the negro boy already mentioned. In fact, earlier during the same night this negro woman had come to the prosecutor's house, had called for her brother, and had told the prosecutor that she wanted him because one of her children was sick. It may be stated just here that this negro boy came back and went to work next morning, but a little later in the day fled, and has not been heard of since. The next morning after the night on which the girl was missed from her father's house, she and the defendant were seen to take a train together in Atlanta for Knoxville, Tennessee. They went together into a coach assigned to colored people. The porter seemed to suspect that the girl was a white girl, and, apparently having some curiosity as to why she should be riding with a negro woman, asked them about it, and the girl told him that she was a negro girl. At Blue Ridge, on the way to Knoxville, the negro woman gave the porter money to buy lunches, and he brought them in to the girl and the defendant. When they arrived at Knoxville, the porter consented to secure lodging for the negro woman, but refused to have anything to do with the white girl, and she went into another portion of the city and se-

cured lodgings. A little later the police arrested the two in different parts of the city.

Now, if this were all the testimony, there might be enough to justify a strong suspicion that this negro woman had decoyed this white girl away in order to shield her brother from the crime he had committed—a crime which, though punishable by only a small penalty, so far as the law is concerned, would probably have been dealt with much more severely by members of the community if once it became known. But the State did not stop there. It brought the girl herself to the witness-stand. She confessed her miserable condition, and stated on the stand that she hereslf had appealed to this sister of the man who had been a partner with her in her unspeakable crime, and had persuaded this woman to take her to Knoxville, Tennessee. The girl herself was ignorant and untraveled, and did not know how to get away from home. The negro boy had furnished the girl with $13. She gave this to the negro woman and told her to purchase the necessary tickets. The understanding between them was that when they got to Knoxville, and the girl secured a lodging place, this negro woman would wait on her there. According to the girl's testimony, however, she never saw anything more of the defendant from the time they last separated at the train until after they were arrested a few days later. If the State's circumstantial evidence made out even such a prima facie case of kidnapping or inveigling as to put upon the defendant the burden of explaining the circumstances, the State's own testimony as it fell from the mouth of this witness, the girl herself, furnished the explanation, and absolutely destroyed whatever approach to a case the State had previously made. The defendant's own statement of the affair was similar to the girl's.

It is insisted (though there is no direct proof of the fact in the record) that this girl is weak and unlettered, and that the defendant is a shrewd and designing woman, and that the girl, even when she was testifying, was so far under the influence of this woman that she lied as to the salient facts of the case. Be this as it may, the State is not in a position to assert it here. The State could not make out a case without putting the girl on the stand, under all the circumstances. If the actual truth is different from what it appears to be according to this record, this unfortunate state of affairs comes about through the inability of the State

to show the truth—as often occurs in the ordinary administration of the criminal law.  With this girl testifying as she does, we do not see how the State can make out a case, unless it obtains some further evidence than that now apparently at its command. So long as the State is under the necessity of supplementing its circumstantial evidence with the testimony of the girl, it is obliged to adopt the theory of the case shown by the girl's testimony.  This proposition involves no contradiction of the doctrine that where the State has two witnesses, and one of them makes out a case and the other states facts to the contrary, the State may nevertheless ask for and sustain a conviction on the testimony of the first witness, if it is believed by the jury.  The girl's testimony in this case does not contradict the circumstances by which the State makes its first approach toward a proof of the case.  Her testimony is consistent with all these things—that she left her father's house when she heard the defendant call the negro boy; that she went to the branch, just as her father says she went; that she met the defendant, and that they walked to the car line; that they came on to Atlanta, and that they took the train for Knoxville; that she furnished the negro woman money which the negro boy had furnished her.  All these things the girl herself directly testified to, and yet she says that she herself was the movant in the entire matter.  She testified only under the compulsion of the court, at the instance of the State; but, when she did testify, she absolutely ruined the State's case.

If this woman is guilty, the State has not proved it; for it is material in a prosecution of this kind for the State to show that the defendant "forcibly, maliciously, or fraudulently" led, took, or decoyed away the child.  Now, as to a child under the age of discretion, it might be sufficient merely to show that the child ran away from home and was materially assisted by the defendant in getting away.  A child of tender years is not supposed to have sufficient will and judgment to direct an affair of that kind; but this girl was above the age of discretion, was about 17 years old, was about to become a mother, was in a condition that demanded action on her part, and, if she is telling the truth about it, she did what was most natural—appealed to this woman to go away with her and help her shield her disgrace.  If this is all the defendant did (and it is all that the proof shows that she did), she is guilty

6

of no crime. The shockingness of the situation, the natural feeling that somebody ought to be punished on account of this unnatural state of affairs that was existing, doubtless led the jury to convict, notwithstanding the evidence is as we have stated it. Detestation for crime too often causes men's minds to rush to conclusions of guilt as against any one charged with complicity in the transaction. But, horrible as this affair is, there can be no relaxation of that most essential rule by which the liberty of all of us is guarded, namely, that no person shall be convicted on suspicion alone, nor held accountable to the law for a crime which the State is unable to prove by either direct or circumstantial testimony. Solely for the lack of evidence to support the verdict, the judgment is　　　　　　　　　　　　　　　　　　　*Reversed.*