(116 So. 806)

## SKINNER v. STATE.  (6 Div. 218.)

Court of Appeals of Alabama.  May 8, 1928.

Robert G. Tate, of Birmingham, for appellant.

Charlie C. McCall, Atty. Gen., for the State. Brief did not reach Reporter.

RICE, J.  The evidence, in its strongest aspects for the state, considered, though, in view of its undisputed features, makes a case against this appellant, substantially as we now proceed to state:

Mary O'Hara, a woman 26 years of age, in the possession of all her faculties, both physical and mental, in good health, not intoxicated, nor under the influence of any opiate, went at night to a fishing camp, on the river, about one hour's drive in an automobile from her home, in the city of Birmingham, with appellant, another woman of admittedly unchaste character, and appellant's brother. While she claims she was not advised of their destination when she embarked willingly upon the ride, yet she admits that, arriving at the said camp at about 8:30 or 9:30 o'clock at night, she got out of the automobile willingly, walked around awhile with appellant, and climbed, willingly, 15 or 20 steps from the ground up to the porch of a cottage, in which cottage her woman companion, with appellant's brother, entered, and in which they remained all night. Upon this porch was a cot, upon which Miss O'Hara states she "lay down." True, in another place in her testimony she states that, after "tussling" with appellant until her strength was exhausted, she "fell on it" (meaning the cot). And in still another place that appellant "threw me down on the cot." She testified that she "was on the porch all the entire night, and Ben (the appellant) was with me." Miss O'Hara further testified: That appellant had two acts of intercourse with her— as to the first her statement is that, after the act, she said, "That makes me sick to my stomach; please don't do that," and that appellant's reply was, "Shut up your damn mouth, I'm not going to quit." That, after this first act of intercourse, she went down from the porch of this cottage, leaving appellant there asleep, but that after some time, during which she states that she undertook to get some unidentified men to take her home, not however calling upon the keeper of the camp, who was up and about and around there practically, if not quite, all night, and

who, with his family, occupied a cottage just a few steps away, which cottage was accessible and in calling distance, she went back up the steps to the porch whereon was appellant and the cot, and that after another "tussle" appellant again had intercourse with her. That after the second "time" she begged for this girl (meaning her companion) to come out of the room but that said girl did not come. She states that she then went down into the yard, again leaving appellant asleep —this time, she says drunk—and that she accosted some girl and asked to be brought home. That this girl, with said girl's party, consisting of another girl and two men—none of them named with certainty—though the girl first accosted by prosecutrix (Miss O'Hara) is identified as "Miss Cason" after making a breakfast of coffee and sandwiches, in which prosecutrix participated, and of which she partook, brought prosecutrix back to the city of Birmingham, and to her home. Here, at home, so far as the evidence shows, she reported for the first time—and to her aunt, with whom she lived—that she had been raped by appellant.

Miss O'Hara testified that the second "time" (meaning the second act of intercourse) she said to appellant: "Oh, don't do that, that hurts, I can't stand that." She stated that appellant did not threaten her nor offer her physical violence (other than the act of intercourse); that she never cried out nor called for help; that after the second act of intercourse she went down in the yard, and that is was then daylight.

The above, while not a complete, detailed statement of the evidence, is yet substantially all that is shown by it. There are, it is true, some other slight circumstances shown from which it appears that prosecutrix (to so denominate Miss O'Hara) was anxious to return to the city of Birmingham earlier than the other members of her party were willing to do. But so far as it has any bearing upon the question of whether or not she was forcibly ravished by appellant, what we have stated above covers the case.

■ We are not unmindful of the rules which require appellate courts to proceed with the greatest caution in the matter of overriding the action of trial courts in granting or refusing motions for a new trial; nor of those requiring similar caution on the part of trial courts in the matter of setting aside the verdicts of juries. But, where the verdict of the jury, after allowing all reasonable presumptions in favor of its correctness, is so against the preponderance of the evidence as to shock the conscience, it is the duty of the trial judge to set it aside.

■ This court has read the entire evidence in this case, sitting en banc, and while, because of the rule prevailing in this state requiring a case to be submitted to the jury when there is a scintilla of evidence supporting the charge, we cannot say the trial court was in error in refusing to give the general affirmative charge in appellant's favor, yet we are of the opinion that the verdict of the jury should have been set aside upon appellant's motion.

■ In our statement above, we have confined ourselves to a summary of the evidence on the part of the state, in connection with that which was undisputed. Even on this we are of the opinion that appellant's motion for a new trial should have been granted. It fails to more than technically meet the requirements for conviction of the charge of rape. And, when it is considered in the light of the circumstances—no threats on the part of appellant, no violence, no outcry by prosecutrix, no evidence of any injury to her person indicating a struggle, no call for help, which was shown to be at hand, the fact that prosecutrix stayed with appellant, not being held or threatened, from 8:30 or 9:30 at night until daylight, that one act of intercourse occurred early in the night, the other at or near daylight, that between the two acts appellant was asleep, and she was up and completely away from him, that no complaint was made to any one at the "locus in quo," nor until after prosecutrix had reached her home, miles away, all these, and others that could be catalogued—when the state's evidence is considered in connection with these circumstances, the verdict of the jury finding appellant guilty of rape shocks our conscience. And then, when we consider the appellant's testimony, and that of his witnesses, the other members of the party with prosecutrix, and the keeper of the camp, we are clear to the conclusion that a great injustice has been done.

As for the moral aspects of jaunts such as was engaged in by appellant and prosecutrix we have nothing to say. But, as for sustaining the conviction for the offense of rape suffered by appellant, we feel impelled to say that under and in obedience to the well-established rule prevailing in this state, it is, our opinion, and we so hold, that the evidence was entirely insufficient, and the trial court erred in not granting appellant's motion to set the verdict of the jury aside and grant him a new trial.

Reversed and remanded.