(128 So. 587)

## HUBBARD v. STATE.
### 4 Div. 605.

Court of Appeals of Alabama.
May 27, 1930.

Huey & Huey, of Enterprise, for appellant.

538

Charlie C. McCall, Atty. Gen., for the State.

SAMFORD, J.

The defendant and his brother Lawrence were young men; the defendant being 22 years of age. They had known since childhood two girls, Annie Belle Holmes and Willie Pearl Anderson, who were, at the time laid in the indictment, respectively 17 and 18 years of age. The girls lived in Enterprise and the boys in the country near Bellwood. The boys saw the girls Saturday night, and it was agreed between them that the girls should go to ride with the boys on Sunday afternoon in an automobile and that they would ride over to see the "flood district" at Elba. The boys came in the car on Sunday afternoon, and both girls were waiting near Feagin's store on the streets of Enterprise. Both girls got into the car without further invitation—Willie Pearl in front with Lawrence and Annie Belle on the rear seat with defendant. When they got in the car, Annie Belle said she wanted to go to Elba, but Lawrence then said that he wanted to go to Geneva, and from that, and without further protest on the part of Annie Belle, the party went on to Geneva, which was south of Enterprise. When they got to Geneva, they drove around for three or four hours, and late in the afternoon started back towards Enterprise. When about two miles on this road, the car turned to the right towards Bellwood, which is one route from Geneva to Enterprise, and just before coming to Bellwood the car stuck in a mudhole. Up to this time there had been no protest on the part of Annie Belle. Bellwood was not in Coffee county. At the place where the car was stuck, according to the testimony of Annie Belle, is the first time she even suggested that she be taken home. The other three witnesses who were present testify that it was Annie Belle who, either at the mudhole or at Bellwood, suggested that they go to Columbus, Ga., where she had a sister.

From the time the two girls met the two boys in Enterprise, where they both voluntarily got in the car for a ride, no physical force or coercion was used to force Annie Belle to go or continue with the party. She was told before she left the streets of Enterprise that the party was going to the flood

district at Geneva instead of Elba, as planned the night before. She made no protest, no effort to get out. She went on with the party with apparent congeniality on the entire trip covering three days and nights, stopping at stores along the route for food, and spending the nights in the woods sleeping in the car. Five times, without protest and with apparent willingness, she had intercourse with defendant, and only two or three times, according to her testimony, she mildly suggested that she be taken home. The car was driven by Lawrence at the time they crossed the bridge into Columbus, Ga. They drove around the streets for a short time, never stopped, and then drove back, taking a route by Tuskegee, Union Springs, Banks, Enterprise, and on a few miles to the house of the boys, where they spent the night, and from there they were taken home by the uncle of the boys. Annie Belle was the only witness for the state. The other three, including the defendant, testify to a statement of fact flatly contradicting the witness Annie Belle as to her unwillingness to go on the trip, and other witnesses testify to statements made by Annie Belle that she went of her own free will and accord. However reprehensible the conduct of the parties may have been from the standpoint of morals, the crime—if crime it was—is not kidnaping. The statute condemning kidnaping is section 3189 of the Code of 1923, and reads:

"Any person who forcibly or unlawfully confines, inveigles, or entices away another, with the intent to cause him to be secretly confined, or imprisoned against his will, or to be sent out of the state against his will, must, on conviction, be imprisoned in the penitentiary for not less than two nor more than ten years."

In this indictment the charge is that defendant forcibly or unlawfully confined, inveigled, or enticed away Annie Belle Holmes with the intent to cause her to be sent out of the state against her will. The gravamen of the offense charged is the *intent* that Annie Belle Holmes be sent out of the state contrary to the statute against kidnaping. Every scintilla of evidence in this record rebuts this charge. The story of the meanderings of the party from the time they left Enterprise until their return three days later evidences a different purpose and motive than the transporting of Annie Belle out of the state. That they did drive across the bridge into Columbus and back again was a mere incident of the trip they were taking, and there is no evidence that Columbus was to be the destination of the party. While it is true that the criminal intent necessary to the existence of the offense is implied or necessarily included in the prohibited act, as declared in People v. Fick, 89 Cal. 144, 26 P. 759, and People v. Bruno, 49 Cal. App. 372, 193 P. 511, when a specific intent is an element of the offense (as

here), the fact of kidnaping alone is not sufficient, and the intent must be proved. Ex parte Keil, 85 Cal. 309, 24 P. 742; Com. v. Nickerson, 5 Allen (Mass.) 518. Nor will the fact that, in a ride extending over a period of three days beginning in Coffee county and ending in Coffee, the trip included a short distance into another state be sufficient evidence alone upon which to base a finding that defendant intended to cause Annie Bell Holmes to be sent out of the state against her will.

■ Moreover, the overwhelming weight of the evidence is to the effect that the girl Annie Belle went on the ride voluntarily, that she continued with the party of her own free will and accord, and that the testimony given by her as to her unwillingness is an afterthought. Under such circumstances, even if there were a scintilla of evidence from which, by a wide stretch of the imagination, it might be said that there was an intent on the part of defendant to take the girl to Columbus, the motion for a new trial should have been granted. Mason v. State, 29 Tex. App. 24, 14 S. W. 71; Hendon v. State, 10 Ga. App. 78, 72 S. E. 522.

■ A rule oft invoked by this court is to the effect that evidence which raises no more than a suspicion of defendant's guilt, or, admitting all it tends to prove, the guilt of defendant of the offense charged, is left in a state of uncertainty, or, dependent on conjecture or probabilities, a verdict of the jury finding the defendant guilty should be set aside. Taylor v. State, 20 Ala. App. 161, 101 So. 160; Skinner v. State, 22 Ala. App. 457, 116 So. 806.

■ Over objection of defendant duly and timely made and exception reserved to question and answer, the state's witness was allowed to testify that she attempted to get away at Ewell and that she attempted to get out of the car. This was error. The question asked called for a conclusion, and the answer was the conclusion of the witness. Gilbert v. State, 20 Ala. App. 28, 100 So. 566; Osborne v. State, 140 Ala. 84, 37 So. 105; Hill v. State, 137 Ala. 66, 34 So. 406; Bettis v. State, 160 Ala. 3, 49 So. 781.

■ The solicitor in his closing argument made use of this statement: "I submit to this jury that any man who takes the virtue of one woman will take the virtue of another woman." This defendant was not being tried on a charge of being a seducer of women. There was no evidence that he had taken the virtue of any woman. There is no element of seduction in this case. The statement of the solicitor was out of place and calculated to prejudice the defendant. The objection of defendant to this statement should have been sustained. Davis v. State, 20 Ala. App. 463, 130 So. 73.

For the errors of the trial court indicated in the foregoing opinion, the judgment is reversed, and the cause is remanded.

Reversed and remanded.