143 So. 201

## STURDIVANT v. STATE.

### 5 Div. 873.

Court of Appeals of Alabama.
June 30, 1932.

Jas. W. Strother, of Dadeville, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

BRICKEN, P. J.

This appellant was indicted, tried, and convicted for making a false entry on the books and accounts of the Sturdivant Bank, at Dadeville, Ala., in violation of section 3409, Code 1923, which reads as follows: "Any individual banker or director, officer, agent or employee of an incorporated bank or individual banker, who wilfully and intentionally makes or concurs in making any false entry, or wilfully and intentionally concurs in omitting to make any material entry on its books and accounts, shall be guilty of a felony, and on conviction must be sen-

tenced to the penitentiary for not less than two years, nor more than ten years."

The indictment is as follows:

"The Grand Jury of said county charge that before the finding of this indictment Herbert Sturdivant, an individual banker, and Fred Sturdivant, an individual banker, doing a banking business as partners in the firm name of The Sturdivant Bank, at Dadeville, Alabama, did wilfully and intentionally make, or concur in making a false entry on the individual account sheet of Mrs. J. F. McKissack, a customer of said bank, in the individual ledger of said bank, consisting of a charge against said account in the sum of Twelve Hundred ($1200.00) Dollars on August 12, 1929.

"Count 2. The grand jury of said county further charge that before the finding of this indictment, Herbert Sturdivant and Fred Sturdivant, individual bankers, operating a bank known as the Sturdivant Bank at Dadeville, Alabama, did wilfully and intentionally make or concur in making a false entry on the individual account sheet of Mrs. J. F. McKissack in the individual ledger of said bank, said false entry consisting of a charge against said account of Mrs. J. F. McKissack in the sum of Twelve Hundred ($1200.00) Dollars, against the peace and dignity of the State of Alabama."

This appellant demanded a severance, which was granted by the court.

In order to sustain this prosecution, the burden rested on the state to satisfy the jury beyond a reasonable doubt, from the evidence in the case, that in Tallapoosa county, before the finding of the indictment and within the time covered thereby the defendant (1) was an individual banker; (2) was doing a banking business as a partner with Herbert Sturdivant under the firm name of the Sturdivant Bank; (3) that the defendant did willfully and intentionally make, or (4) concur in making, (5) a false entry on the individual account sheet of Mrs. J. F. McKissack, a customer of said bank, (6) consisting of a charge against said account in the sum of $1,200.

J. W. Pittman, called by the state, testified as follows: "My name is J. W. Pittman; I live in Dadeville and have since September 1921. I am acquainted with The Sturdivant Bank; it closed on the 16th of December and has been in the hands of the State Banking Department since the 17th day of September, 1931. H. C. Sturdivant and F. F. Sturdivant operated the bank prior to the time it was closed, known as Herbert Sturdivant and Fred Sturdivant. I did business with them; I was a customer of theirs; I saw them both at work in the bank. Fred waited on the window as well as H. C. Sturdivant; I really don't know what his job was. There was a machine in the bank for posting ledgers. This sheet (that was identified as the individual account of Mrs. J. F. McKissack) that I hold in my hand, with the name 'Mrs. J. F. McKissack' at the top of it, is the sheet that was in the ledger when it came into my possession; it is in the same condition now it was then, except being removed from the ledger. This is a loose leaf ledger; I tore the sheet out of the ledger. There was a machine in that bank at that time I took charge, two machines, posting machines. I was appointed liquidating agent of the Sturdivant Bank by D. F. Green, Superintendent of Banks of Alabama; the appointment was approved by Judge Bowling and I took charge of the bank on the 24th of December from Mr. J. H. Williams. This ledger was then in the bank; when I took charge of the bank there was what is known as a posting machine in there; besides Mr. Williams and myself, Mr. Howle, one of the State Bank Examiners, was there when I took possession of the bank. Mr. Williams and Mr. Howle had been in charge since the 17th."

J. H. Williams, a state's witness, testified: "My official position in December 1930 was State Bank Examiner. I made an inventory of the assets of the Sturdivant Bank; I worked four days there, the 20th, 21st, 23rd and 24th of December last year. There were two posting machines in the bank, one of them was an old one, hardly capable of doing any efficient work. This sheet (the individual ledger sheet of Mrs. J. F. McKissack) was kept on this Burroughs Ledger Posting Machine. I didn't see the entries made on it. There are two machines in there that would make figures, either one of them; as to both being in operation at the time I was there, they would both run but one was not dependable. The other one was in good mechanical condition."

Mrs. J. F. McKissack testified: "The pass book shows my deposits in the Sturdivant Bank, and that is what it is. I made those deposits shown in the book at the bank. That deposit on May 9, 1930, $150.00, I made to Mr. Fred Sturdivant; he took a deposit, and the next deposit, 11/20/30 $100.00, was made to Mr. Herbert Sturdivant. I saw Mr. Herbert Sturdivant and Mr. Fred Sturdivant working in that bank from time to time. I have seen Mr. Raymond Sturdivant in there."

The solicitor asked the witness the following question: "During the last year who did you see operating that machine in there that keeps the ledger?"

The witness answered: "I don't know."

The solicitor asked: "You don't remember?" The witness said: "I don't remember."

The witness testified: "I have not drawn any checks against my account there at the bank; I did not on August 12, 1921, draw a check for $1,200.00 against my bank account at the bank; I did not authorize any-

body to sign my name to a check against that account. I had drawn checks against this account in 1925, about January 13, 1926; I did not draw any checks against it; I had on deposit at the time the bank closed $3,056.00; there were no checks out against that."

F. M. Coleman testified: "I at one time worked for the Sturdivant Bank; I began August 13, 1923, and resigned on October 24, 1929; I didn't quit at the time; I stayed on until the 15th of November. The accounts under my control were checked up on November 1st and I hung around from November 1st to the 15th. I have seen the sheet before (referring to the individual account of Mrs. J. F. McKissack); that sheet was in the ledger when I worked there."

The solicitor asked the witness the following question: "During the time you worked there who kept this individual ledger in the bank?" The witness answered: "F. F. Sturdivant."

The witness further testified: "F. F. Sturdivant is Fred Sturdivant. It was kept on a Burroughs Posting Machine. I did some work on the ledger by the way of running that machine; very seldom though, only in extreme cases when Mr. Fred Sturdivant was sick, but outside that I didn't fool with it. I did not keep the individual ledger or make a good many entries; I did not have it in charge."

Being asked if he did not make a good many entries, the witness said: "Well, I posted some; yes, I can't account for how many entries I made there."

The solicitor asked then: "Did you make this entry here, $1,200.00, August 13, 1929?" The witness answered: "I don't recollect of any $1,200.00 entry; no sir. I did not make any of these entries there on Mrs. McKissack's account. I never made an entry on there when I had no check to make it from. I was working for the Sturdivant Bank in August 1929 and I do not recollect any entry like that."

D. Hodo, called by the state, testified: "I have not done any business with the Sturdivant Bank individually; I have for the Dadeville Motor Company as their agent. I have been in there a good many times during 1930; I was in there during the month of December; during that month Mr. Herbert Sturdivant and Mr. Fred Sturdivant worked in there; I don't recall seeing anybody else working in there during that month. I saw Mr. Fred Sturdivant taking the deposits and running the Adding Machine; running that machine that the ledger sheets run through; I didn't see anybody else operating that machine. The last time I saw him in there was on the 9th day of December, 1930."

J. W. Pittman, being recalled, testified: "I nave stated that prior to the closing of this bank I had been in the bank a good many times."

The solicitor asked the witness the following question: "Who did you see working in there during the few weeks before it closed?" The witness answered: "The two Sturdivant boys, Herbert and Fred."

The solicitor asked said witness the following question: "Did you see anybody else working in there during the few weeks before it closed, say during the last six weeks?" The witness answered: "I don't recollect; I have seen Herbert Sturdivant in there at different times; I don't remember exactly when it was."

The solicitor asked the witness the following question: "Did you ever see any one operating the Burroughs machine?" The witness answered: "Yes, sir, I saw Fred Sturdivant operating it."

Prof. A. Z. Meigs testified: "I live in Dadeville; before the Sturdivant Bank closed I did business with the bank; I was in there sometimes; the two Sturdivants, Herbert and Fred worked in there. I have seen Fred Sturdivant wait on the window, taking deposits; seen him working the machine; I say the machine they used in there posting those yellow sheets or individual ledger sheets, that was the machine he was operating; I have seen him operating that machine several times; I never did see any one else operating that machine in there. I saw him several times from August 1928 till the time it closed in December 1930. I say I believe it was in 1928 I commenced doing business over there; I say I believe it was in 1928, I would have to look up my records, I don't know. I couldn't recall how many times I saw him operating that machine; several times. I am not familiar with the kind of machine; I saw him putting something similar to those sheets in the machine and running them through and putting them back; it was a loose sheet."

T. F. Adams testified that he was state bank examiner; that he examined the Sturdivant Bank three times during the last three years; that he examined it the last time about December 10, 1930, and again probably a year prior to that time. "Fred Sturdivant was there at that time; during that day there I saw some one operating the posting machine on which the individual ledger was kept or carried there in this machine."

The solicitor then asked the witness: "Who did that?" The witness answered: "I saw Fred Sturdivant. He was posting the daily checks and deposits against the deposit account."

William Gray testified: "During the last year or so I have had occasion to be in the Sturdivant Bank occasionally. I have during the last year seen Mr. Fred Sturdivant oper-

ating the machine on which the individual ledger was kept. Herbert Sturdivant also worked in the bank. I don't recall having seen Herbert Sturdivant operating that machine; he was working in the bank; that machine could be run by anyone in the world who knows how to operate it; it can be set on a past date or a future date, whatever date you want, and can be operated at any time, day or night."

Brown Owens testified: "I have seen Fred Sturdivant at the machine on which the individual ledger records are kept, operating it; I couldn't say whether he was working the ledger or not; he could have been adding."

The ledger sheet was introduced in evidence, and is in words and figures as follows:

#### Ledger Sheet

The Sturdivant Bank, Dadeville, Ala.
Sheet No. ——

Name Mrs. J. F. McKissack

Address ——

| Old Balance | Checks Balance Brought Forward | | Deposits Checks Returned | |
|---|---|---|---|---|
| 1,494.23 | Jan 13 '25 | | Jan 13 '26 | 23.00 |
| 1,517.23 | Jan 29 '26 | | Jan 29 '26 | 23.00 |
| 1,540.23 | Jun 28 '26 | | Jun 28 '26 | 40.00 |
| 1,580.23 | Oct 7 '26 | | Oct 7 '26 | 50.00 |
| 1,630.23 | Jan 24 '27 | | Jan 24 '27 | 131.40 |
| 1,761.63 | Mar 14 '27 | | Mar 14 '27 | 50.00 |
| 1,811.63 | Oct 24 '27 | | Oct 24 '27 | 50.00 |
| 1,861.63 | Jan 24 '28 | | Jan 24 '28 | 130.00 |
| 1,992.13 | Jan 25 '28 | | Jan 25 '28 | 7.87 |
| 2,000.00 | May 24 '28 | | May 24 '28 | 50.00 |
| 2,050.00 | Jul 18 '28 | | Jul 18 '28 | 50.00 |
| 2,100.00 | Oct 22 .'28 | | Oct 22 '28 | 50.00 |
| 2,150.00 | Jan 16 '29 | | Jan 16 '29 | 76.00 |
| 2,226.00 | Jan 17 '29 | | Jan 17 '29 | 80.00 |
| 2,306.00 | Apr 22 '29 | | Apr 22 '29 | 120.00 |
| 2,426.00 | Nov 20 | | Nov 20 | 154.00 |
| 2,580.00 | Oct 4 '29 | 1,000.00— | Oct 4 '29 | |
| 1,580.00 | | 360.00— | | |
| 1,220.00 | Aug 12 '29 | 1,200.00— | Aug 12 '29 | |
| 20.00 | Feb 2 '30 | | Feb 2 '30 | 134.00 |
| 154.00 | May 10 '30 | | May 10 '30 | 150.00 |
| 304.00 | Nov 21 '30 | | Nov 21 '30 | 100.00 |

#### Balance

| | | |
|---|---|---|
| | 1494.23 | |
| Jan | 13 '26 | 1,517.23* |
| Jan | 29 '26 | 1,540.23* |
| Jun | 28 '26 | 1,580.23* |
| Oct | 7 '26 | 1,630.23* |
| Jan | 24 '27 | 1,761.63* |
| Mar | 14 '27 | 1,811.63* |
| Oct | 24 '27 | 1,861.63* |
| Jan | 24 '28 | 1,992.13* |
| Jan | 25 '28 | 2,000.00* |
| May | 24 '28 | 2,050.00* |
| July | 18 '28 | 2,100.00* |
| Oct | 22 '28 | 2,150.00* |
| Jan | 16 '29 | 2,226.00* |
| Jan | 17 '29 | 2,306.00* |
| Apr | 22 '29 | 2,426.00* |
| Nov | 20 | 2,580.00* |
| Oct | 4 '29 | 1,580.00* |
| | | 1,220.00* |
| Aug | 12 '29 | 20.00* |
| Feb | 2 '30 | 154.00* |
| May | 10 '30 | 304.00* |
| Nov | 21 '30 | 404.00* |

The state rested its case. The defendant thereupon requested the general charge, which was refused, and, as stated, the jury returned a verdict finding him guilty as charged in the indictment. Defendant made motion for a new trial, which was overruled, and exception was reserved. This appeal is prosecuted from the judgment of conviction pronounced and entered, and from the order of the court overruling motion for a new trial.

We have quoted in extenso from the record for the purpose of having before us all of the evidence that relates to the charge that the defendant "did willfully and intentionally make, or concur in making, a false entry on the individual account sheet of Mrs. J. F. McKissack."

■ The law is well settled in the state that a scintilla of evidence in support of a charge contained in the indictment requires a submission of the case to a jury. Skinner v. State, 22 Ala. App. 457, 116 So. 806.

■ We have also repeatedly held that, when a jury may infer a material fact from the evidence, the general charge should be refused. Manning v. State, 217 Ala. 357, 116 So. 360. Otherwise expressed, we have declared that a directed verdict is improper, if opposed by any evidence, however weak and inconclusive, which tends to make out a case against the party requesting the charge. Grimes v. State, 24 Ala. App. 378, 135 So. 652, and cases cited.

■ On the other hand, a mere suspicion that the defendant may have guilty connection with the crime charged is insufficient to require the submission of the case to the jury. In Miller-Brent Lumber Co. v. Douglas, 167 Ala. 286, 52 So. 414, 415, the court said: "The possibility that a thing may occur is not alone, under any fair, reasonable deduction, evidence, even circumstantial, that the thing did, in fact, occur." "Proof which goes no further than to show an injury could have occurred in an alleged way does not warrant the conclusion that it did so occur." Southworth v. Shea, 131 Ala. 419, 30 So. 774, 775.

In personal injury cases, the settled rule in this state is that, where the testimony leaves the matter uncertain, and shows that any one of a half dozen things may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. American Cast Iron Pipe Co. v. Landrum, 183 Ala. 132, 62 So. 757.

■■ The burden of proof never shifts from the state in a criminal case. Where the evidence tending to connect the defendant with

the crime is entirely circumstantial, the humane provision of law is that there should not be a conviction unless to a moral certainty it excludes every other reasonable hypothesis than that of the defendant's guilt. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty by that full measure of proof the law requires. Cannon v. State, 17 Ala. App. 82, 81 So. 860.

Facts and circumstances that are only suspicious of guilt will not suffice. Spelce v. State, 17 Ala. App. 401, 85 So. 835.

These well-settled rules of law in this state are not in dispute; the difficulty obtains in their application to the facts in the case.

■ There is no testimony in this record tending to show that the entry of August 12, 1929, consisting of a charge against Mrs. J. F. McKissack's account of $1,200 *was a false entry*. This witness testified: "I did not on August 12, *1921*, draw a check for $1,200 against my account at the bank." (Record, p. 20.) It may be that "1921" in this testimony, as transcribed in this record, is a typographical error and was intended for "1929." However that may be, we are impressed that, viewed in its light most favorable to the state, the utmost this record shows is that Herbert Sturdivant, Fred Sturdivant, and Raymond Sturdivant worked in the bank; that from time to time the defendant operated a bookkeeping machine with which posting was done on the individual ledger sheets of the customers of the bank. F. M. Coleman also operated the machine at times, although he denied making the $1,200 entry of August 13, 1929. In fact, this witness testified that he was working for the Sturdivant Bank in August, 1929, and did not recall any entry like that. No one testified that the defendant made this entry, or that he ever posted anything on Mrs. McKissack's sheet, or that it was his duty so to do. The utmost the evidence shows in this respect is that the defendant posted entries in the individual ledger where Mrs. McKissack's account was carried on the machine from time to time. We do not think the jury would be warranted in inferring that he made any entries on Mrs. McKissack's sheet from the fact that he made entries on other sheets in the ledger, unless it was shown it was his duty to make entries on Mrs. McKissack's sheet.

■ As we understand this record, it is a matter of conjecture, speculation, and surmise as to who made the entry complained of, even it be conceded it was a false entry. In these circumstances, there was nothing to submit to the jury, and the court erred in refusing to give the general affirmative charge requested by the appellant, as well as in overruling his motion for a new trial.

It will be unnecessary to pass on other questions raised by the record, as they may not occur on a subsequent trial. For the reasons indicated, the judgment of conviction is reversed and remanded.

Reversed and remanded.