83 So.2d 722

## Roy HANDLEY

v.

## STATE.

### 6 Div. 14.

Court of Appeals of Alabama.

Aug. 9, 1955.

Rehearing Denied Aug. 30, 1955.

Beddow & Jones and Roderick Beddow, Jr., Birmingham, and Marvin H. Galin, Cullman, for appellant.

John Patterson, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for the State.

BONE, Judge.

Appellant was tried and convicted in the county court for illegal possession of alcoholic beverages. He appealed to the circuit court and trial was there had before the court and jury. The jury found the appellant guilty as charged and fixed his fine at $100. The court thereupon added punishment of four months at hard labor for the county and entered judgment accordingly. Appellant filed a motion for new trial which was denied, and he appeals.

The evidence discloses that the sheriff and other officers went to Handley Motor Car Company, a business owned and operated by appellant, having in their possession at said time and place a search warrant directed to appellant and a "John Doe" warrant for the purpose of searching certain rooms which were located above the garage operated by the appellant. The officers arrived in midafternoon of the day in question and found appellant, Charles Goad, and several other persons working around the garage. According to the State's evidence, appellant was told that they had a search warrant and was asked if he wanted to read it; to which he replied that he did not.

The search was then begun, and during said search the sheriff asked the appellant, according to the State's evidence, for a screwdriver for the purpose of opening the lid of a "sun machine" which rattled when shaken by the sheriff. The sheriff testified that appellant said he did not need a screwdriver and proceeded to show the sheriff how to open the lid. Inside were found three pints of whiskey. The "sun machine" was located in the back part of appellant's garage and was an apparatus used in checking certain parts of an automobile. It was equipped with a lid that pulled down from the top so that it could be adjusted to different automobiles. There was enough space in the machine to hold three or four pints of whiskey.

The State's witness then testified that he asked Charles Goad, who was present, if he knew anything about the whiskey, and Goad replied that he did not. Appellant then said something to Goad, and Goad told the sheriff that he would claim the whiskey. The sheriff then asked Goad to accompany him to Goad's apartment located above the garage, which he did, and they remained in the apartment some fifteen or twenty minutes. Upon returning from the apartment the sheriff asked Goad if he still wanted to claim the whiskey, and Goad replied, "No." The sheriff then said to appellant, "Lets go."

Witnesses for appellant testified that appellant had been away from the garage from approximately 10:30 A.M. to 2:30 P.M. on the day in question and that the officers came immediately after appellant's return. The testimony was undisputed that Goad had been inside the garage several times that day, and at approximately eleven o'clock he had in his possession a sack containing what appeared to be two or three pints of whiskey. Goad was later drinking whiskey in the garage, with others, from a pint bottle. Goad had asked Cephus Ray, an employee of appellant, if he could put the sack in a car upon which Ray was working, and was not allowed to do so.

Appellant, testifying in his own behalf, denied that the whiskey belonged to him and denied having any knowledge of its presence in his garage. Appellant testified also that when Goad returned from upstairs with the sheriff he stated to appellant that they were going to take appellant anyway and there was no use in both of them going; that the sheriff had told Goad in his presence that it wasn't Goad's whiskey and said, "We will see whose it is. We didn't come after you. We came after Roy Handley."

It was also shown that Goad was not in the employ of appellant, that the garage was a public place, and that many people were in and out of it on the day in question.

The only question necessary for us to here decide is the court's refusal to give for appellant the requested affirmative charge.

We think it is in order to quote the words used by this court in Grimes v. State, ante, p. 94, 76 So.2d 684, 685, Judge Harwood writing as follows:

"Because of the varied factual situations furnishing the background in the innumerable cases involving unlawful possession of alcoholic beverages, it is difficult to work out from them any clearly defined pattern.

"It is definite however that where possession of the beverage is constructive, the State, to sustain a conviction, must show, in addition to the constructive possession, a guilty knowledge of the presence of the beverage. And, as in all criminal prosecu-

tions the guilty knowledge, or scienter, on the part of the accused, must be fastened upon him by a showing of facts or circumstances enabling a jury to conclude beyond a reasonable doubt that the accused knew such fact. This for the reason that verdicts and judgments of guilt in criminal cases cannot rest upon speculation, surmise, or suspicion."

The case of Clayton v. State, 22 Ala.App. 276, 114 So. 787, was one very similar to the case now before us. In that case, officers went to a pressing shop operated by defendant and found one-half quart of whiskey in the back part of the shop. Defendant denied that it was his liquor and denied any knowledge of its presence. Many people frequented the place, it being a public place. Some men had been drinking there that day, and defendant had told them they could not drink there. The defendant's testimony of having no knowledge of the liquor was not disputed, and there was no evidence to connect him with the whiskey, or tending to show that he had any knowledge of its being in his place. The court in deciding the case quoted with approval from Hayes v. State, 22 Ala.App. 264, 114 So. 674, 675:

"In a criminal prosecution the guilty knowledge must be brought home to the principal by facts or by circumstances from which the jury can find beyond a reasonable doubt that the defendant knew the fact with which he is charged. It was never the intention of the Legislature to render liable to prosecution owners of land upon which stills or prohibited liquors might be found, unless the facts and circumstances would authorize a jury in finding from the evidence, beyond a reasonable doubt, that such land owner was conscious of the fact that the prohibited article was on his premises and permitted to remain there with his consent. * * * there must be a conscious and substantial possession by the defendants of the prohibited liquor before there can be any sort of criminality."

See also Fair v. State, 16 Ala.App. 152, 75 So. 828.

■ An examination of the evidence now before us convinces us that there is nothing in the record from which the jury could infer the guilty knowledge of this appellant. There is no evidence connecting appellant with the whiskey or tending to show that he had any knowledge of the whiskey being in his place of business. It was shown that many people frequented the garage, and any one of them may have put it there. The evidence shows further that one Goad admitted the ownership of the whiskey when it was first discovered.

■ It is conceded that the whiskey which was found could have belonged to the appellant, but it could have, with equal reasoning, belonged as well to any one of the others shown to have access to the premises where it was found. However, "the possibility that a thing may occur is not alone, under any fair, reasonable deduction, evidence, even circumstantial, that the thing did, in fact, occur." Miller-Brent Lumber Co. v. Douglas, 167 Ala. 286, 52 So. 414, 415.

"Proof which goes no further than to show an injury could have occurred in an alleged way does not warrant the conclusion that it did so occur". Southworth v. Shea, 131 Ala. 419, 30 So. 774, 775.

See also Sturdivant v. State, 25 Ala.App. 200, 143 So. 201.

At most the evidence presented in the case now under consideration raises a mere suspicion. To allow this conviction to stand would be to allow the jury to simply guess that the appellant was guilty. "Such is not permitted by the law." Duncan v. State, 28 Ala.App. 565, 190 So. 100, 101.

In conclusion, we think we can find no words more applicable than those used by Judge Samford in the case of Tuggle v. State, 22 Ala.App. 89, 112 So. 540:

■ "Human liberty is too sacred and has been too dearly bought to authorize a conviction, except upon legal evidence connecting the defendant with the commission of a crime, and that beyond a reasonable doubt. Facts which would warrant a suspicion, however strong, do not overcome the presumption of innocence."

284

We are, for the reasons above stated, of the opinion that the lower court erred in refusing to give appellant's requested affirmative charge. The judgment is therefore reversed and the cause is remanded.

Reversed and remanded.

## On Application for Rehearing

On application for rehearing counsel in brief requests that we extend our opinion to show the following facts. This, of course, we are glad to do.

At the time the search was made there was found in the back of the garage a "bunch" of empty whiskey bottles. The witness for the State further testified them to be in number 3, 4, or 5. Some of these were hidden and some were sitting around and had a "little" whiskey in them.

Application for rehearing overruled.