### GILBERT v. STATE.   (6 Div. 322.)

(Court of Appeals of Alabama.   April 8, 1924. Rehearing Dismissed.   June 3, 1924.)

I. Homicide ⬅17—Killing one while intending to kill another does not change offense.

If a man kills one person, intending to kill another, his guilt is the same as if he had killed the person intended.

2. Criminal law ⬅517(3)—Evidence confession freely made necessary predicate to admission.

In a prosecution for homicide where no attempt was made to show that a confession was freely and voluntarily given, and no predicate was proven authorizing the testimony, permitting a witness to testify over timely objection that the accused told her that he had shot deceased was error.

3. Criminal law ⬅517(3)—Confessions not received unless voluntary.

Confessions are prima facie inadmissible, and, unless the objection is waived, they will not be received in evidence unless the court is satisfied by evidence that they are entirely voluntary.

4. Homicide ⬅174(7), 338(2)—Testimony as to whether accused passed himself off as a preacher held irrelevant, immaterial, and prejudicial.

In a prosecution for homicide, testimony as to whether the accused passed himself off as a preacher in a county to which he went after the offense was irrelevant and immaterial, shed no light upon the case, and was calculated to prejudice the accused.

5. Criminal law ⬅351(3)—Evidence of flight of accused admissible.

In a prosecution for crime the state may offer proof of the flight of the accused from the neighborhood of the crime as tending to show guilt.

6. Criminal law ⬅361(3)—Both state and accused may offer evidence to explain accused's "flight."

Where a crime has been committed, and proof of the flight of the accused is offered, or evidence tending to show that the accused absented himself from the community in which the alleged crime was committed, both the state and the accused may show what the defendant

did and said when he left, and while away which tend to explain his "flight," which means, as a rule, when used in connection with a prosecution for crime, that the defendant absented himself from the community out of a sense of guilt or fear of, or to avoid, arrest.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Flight.]

**7. Criminal law ⚖═361(3), 413(2)—Accused may not offer self-serving statement in testimony to explain flight.**

Where defendant's flight is involved, accused may not show his declaration that he is not guilty of the crime, which is inadmissible as a self-serving statement, but the accused may offer such acts and declarations of his while absent which may tend to show that his absence was due to an entirely different cause.

**8. Criminal law ⚖═361(3)—Refusal to allow accused to explain flight held error.**

Where accused intended to kill his wife's paramour and killed another person, on the state's showing flight of the accused, refusal to allow him to show that he left the community to keep his small children out of the possession of his wife and her paramour, who were trying to take them away, was error.

**9. Criminal law ⚖═450—Question calling for conclusion of witness held invasive of province of jury.**

A question whether a witness saw a certain person try to shoot the accused, or try to get his gun to draw on the accused called for an opinion or conclusion of the witness, and was invasive of the province of the jury.

**10. Criminal law ⚖═448(1)—Witness should state facts and leave to jury conclusion sought to be elicited.**

A witness should state facts and leave to the jury the conclusion sought to be elicited, which is for the jury to determine from the facts given in evidence.

### On Rehearing.

**11. Criminal law ⚖═1133—Application for rehearing unaccompanied by brief and certification of service on opposing counsel dismissed.**

Under Sup. Ct. rule 38, requiring an application for a rehearing to be accompanied by brief for the applicant and a certificate that such brief has been delivered to the opposing counsel, an application for rehearing, accompanied by no brief and no certification that a copy of the brief had been served on the opposing counsel, will be dismissed.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Lon, alias Alonzo, Gilbert was convicted of manslaughter in the first degree, and appeals. Reversed and remanded.

Mathews & Mathews, of Bessemer, for appellant.

A witness should not be permitted to testify to a conclusion, but should be required to state the fact and let the jury draw the conclusions therefrom. Hodge v. State, 97 Ala. 40, 12 South. 164, 38 Am. St. Rep. 145; Riley v. State, 88 Ala. 195, 7 South. 149; Busby v. State, 77 Ala. 67; Pope v. State, 181 Ala. 21, 61 South. 263; Poe v. State, 87 Ala. 69, 6 South. 378; Morris v. State, 84 Ala. 457, 4 South. 628. When a portion of a conversation is brought out by one party to a controversy, the opposing party is entitled to have the entire conversation detailed to the jury. Jones v. Fort, 36 Ala. 449; Troy Fert. Co. v. Logan, 90 Ala. 326, 8 South. 46; 16 Cyc. 1039.

Harwell G. Davis, Atty. Gen., and O. B. Cornelius, Asst. Atty. Gen., for the State.

Leading questions may be permitted by the trial court. Brassell v. State, 91 Ala. 45, 8 South. 679; Wade v. State, 50 Ala. 164; Hendley v. State, 3 Ala. App. 107, 57 South. 1017; Patrick v. State, 18 Ala. App. 335, 92 South. 87. Error in admitting evidence on cross-examination is not material, where the same matter has been testified to on direct examination without objection. Franklin v. State, 18 Ala. App. 374, 92 South. 526.

BRICKEN, P. J. The homicide complained of in this case appears to have occurred in the year 1909. The indictment against this defendant charging him therewith was not preferred until the February term, 1922, of the circuit court of Jefferson county, in the Bessemer division thereof. The deceased named in the indictment was one Bettie Price, and the evidence discloses that she was a young girl just budding into womanhood at the time she was killed. There is no contention or insistence upon the part of the state that the defendant intended to kill the young girl, the said Bettie Price; to the contrary, it clearly appears from the undisputed evidence, that friendly terms or relationship existed at that time between the defendant and deceased and her entire family, and that no trouble had ever occurred between them. The state did contend, however, that the fatal shot was fired by defendant and that he so fired said shot with the intent or purpose to unlawfully and with malice aforethought kill a man by the name of Jim Hopp or Hopkins, or Snow, who was then and there present.

[1] The law is very certain that if a man kills one person, where the intent was to kill another, the guilt of the slayer is the same as if he had killed the person intended. In other words, the character of the offense, if any, is the same in the eyes of the law that it would have been if the fatal shot had killed the identical person for whom it was intended. To state it differently, if the defendant fired the shot which resulted in the death of the deceased, he would be guilty

---

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

or innocent of the offense charged, the same as if the fatal shot had killed Hopp, the person for whom it was designed. Therefore, in the instant case, under the testimony offered, the real inquiry was whether or not the defendant was justified in shooting at the said Jim Hopp, alias Hopkins, alias Snow, and if he was not so justified, under his plea of self-defense, the fact that he killed Bettie Price instead of the man Hopkins, the intended victim, could avail him nothing.

During the trial of this case, the testimony was permitted by the court, to take a very wide, and we think a most unusual course. As a result, innumerable objections were interposed and exceptions reserved to the rulings of the court upon the admission and rejection of the testimony.

[2, 3] We will not undertake to discuss each of these exceptions, many of which were without merit. It was clearly error however to permit the state to prove by its witness, Mary Ann Hudson, on direct examination, the purported confession of the defendant wherein the witness was permitted to testify, over the timely objection of defendant that "the defendant told her, after the girl was killed that he shot her." There was no semblance of a predicate proven by the state authorizing the introduction of this testimony, nor was there any attempt made to show that such confession was freely and voluntarily given. The oft-announced and well-recognized rule is that confessions in criminal cases are prima facie inadmissible, and, unless the objection is waived, they will not be received in evidence, unless the court is satisfied by evidence that the confession was entirely voluntary. Carr v. State, 17 Ala. App. 539, 85 South. 852. See, also, Poarch v. State, 19 Ala. App. 161, 95 South. 781.

[4] There was some evidence tending to show the flight of the defendant from that particular neighborhood after the alleged commission of the offense; the testimony showing without dispute that defendant went into an adjoining county. But there is no testimony that the defendant changed his name, and whether or not he passed himself off as a preacher in Fayette county was irrelevant, and inadmissible and defendant's numerous objections to this line of testimony should have been sustained, as the inquiry could in no manner shed any light upon the issues involved in this case, and its tendency was calculated to prejudice the jury unduly against the defendant.

By its witness, Mary Ann Hudson, the state, over the objection of defendant, was allowed to ask, "What became of Lon [the defendant] after the shooting?" The witness answered: "He left the country; he left out." Over-like objection she also testified: "Lon Gilbert was gone a year or two. I don't recollect how long, and my boy, Will Hudson, went off with him. I didn't go after my boy, but after he went to see my daughter I found him at Fayette county and I brought him back. Lon was over there too at that time. I don't really know whether Lon was preaching over there or not. I don't know whether he called himself a preacher over there or not." She further testified: "Walker county is just across the river over there. I don't know how far Fayette county is from my home; I went on the train, but I don't know how far it is, and I haven't got any idea. I reckon Lon was gone two or three months before I went over there and got my boy. When I got over there I found Lon Gilbert picking cotton. Lon carried his children over there, the 14 year old girl and the others; that is, he come back and got them somehow; he didn't take them with him, but he got them somehow; they were over there with him when I went over there." The defendant thereupon propounded the following question: "And he told you that he took them over there to keep them out of the way of Savannah (his wife) and Jim Hopp?" The court sustained the state's objection to this question, and by other rulings of similar nature declined to let defendant adduce proof in explanation of his alleged flight.

[5, 6] In a prosecution for crime it is permissible for the state to offer proof of the flight of the defendant from the neighborhood of the crime as a circumstance tending to show the guilt of the accused. But, where a crime has been committed, and proof of flight of the accused is offered, or evidence tending to show that the defendant absented himself from the community in which the alleged crime was committed, the probative force, or the value of the fact of flight depends entirely upon the purpose of the defendant in thus absenting himself from the community. The question as to why the defendant left the community and remained away from it becomes a question for the jury; therefore, when the state offers proof tending to show that the defendant fled from the community, it is permissible under the rules of evidence to allow both the state and the defendant to show all those things which the defendant said and did when he left, and while away from the community, which tend to explain his flight, the quo animo thereof; whether the absence of the defendant was due to a sense of guilt, or his desire to avoid arrest, or through fear of arrest, or, on the other hand, whether his absence was due to other causes. Flight, means, as a rule, when used in connection with a prosecution for crime, that the defendant absented himself from the community of the crime out of a sense of guilt, out of fear of, or to avoid, arrest, and, as stated, any word or act of the defendant while in flight—i. e., while away from the neighborhood of the crime—

tending to explain the reason for his absence is admissible as a part of it.

[7] Of course the defendant, under this rule would not be permitted, to get before the court or jury his declaration that he is not guilty of the crime as this would clearly come within the rule against allowing self-serving declarations; but the evidence which a defendant may offer on this question, as tending to rebut the idea that his absence was in fact a fleeing from justice, are such acts and declarations of his while absent which may tend to show that his absence from the community was due to an entirely different cause. In other words, when flight is offered as a circumstance tending to show the guilt of defendant, the important question is, as to whether, during his absence, the defendant is to be regarded as having been a fugitive from justice, or whether he is to be regarded as having been absent for an innocent and lawful purpose disassociated with any idea of the crime.

[8] It would appear that the rule hereinabove announced is specially applicable to the different phases of the case at bar as shown by the facts. The testimony without dispute tended to show that about 6 months prior to the time that the alleged offense was committed, the intended victim, Jim Hopp, as he was most frequently called, had taken the defendant's wife Savannah Gilbert away from her husband, and that, since the time she had left her husband and her several small children, she and Hopp, as expressed by state witness Mary Ann Hudson, "were staying together and that they were tramping around together to and fro, from one place to another, living at Searles, and then they came back to that community together." And there was some testimony tending to show, or effort made to show, that the woman and Hopp had returned to the community for the purpose of stealing the defendant's small children away from him. There can be no question, therefore, that if his (the defendant's) departure from that community after the alleged commission of the crime was for the purpose of taking his said children into Fayette county "to keep them out of the way of Savannah (his wife) and Jim Hopp (the alleged paramour) the question of his guilt or innocence of the charge against him should not be burdened with the fact that he had fled from the community, and this without the opportunity afforded him to explain why he left and went into Fayette county. The court erred in not permitting this testimony to go to the jury and to be considered by them as an explanation of the alleged flight shown by the state.

[9, 10] There was also merit in the objections interposed, and exceptions reserved by the defendant, to a line of inquiry pursued by state in propounding such questions as "Did you see Jim Hopp try to do anything to Lon Gilbert either before or after that gun was fired?" Also, "I will ask you if you saw Jim Hopp try to shoot Lon Gilbert, or try to get his gun to draw on Lon Gilbert?" These questions clearly called for an opinion or conclusion of the witness and were invasive of the province of the jury. The rule is that the witness may state the facts and leave to the jury the conclusion sought to be elicited, as it was for the jury to determine, from the facts given in evidence.

Upon another trial of this case other questions here presented may not arise; we shall therefore refrain from discussing them.

The judgment of conviction appealed from is reversed and the cause remanded.

Reversed and remanded.

## On Rehearing.

[11] The opinion in this cause was handed down on April 8, 1924, the judgment of the lower court being reversed and the cause remanded.

On April 22, 1924, the Attorney General, in behalf of the state, filed a purported application for rehearing; but no brief accompanied the so-called application for rehearing, and there was no certification that a copy of brief had been delivered to opposing counsel, which under Sup. Ct. rule 38 (83 South. vi) must be done.

The application for rehearing is therefore dismissed for a noncompliance with the mandatory provisions of said rule supra. The certificate of reversal of the judgment of the lower court and the remandment of the cause will issue forthwith by the clerk of this court.

Application dismissed.