On Remand from the Alabama Supreme Court
Triona Ann Carter was charged with murder made capital because two or more people were killed pursuant to one course of conduct. §13A-5-40(a)(10), Ala. Code 1975. She was tried by a jury and was convicted of murder and manslaughter, violations of §§ 13A-6-2 and13A-6-3, Ala. Code 1975, respectively. She was sentenced to life imprisonment on the murder conviction and to 20 years' imprisonment on the manslaughter conviction. This Court reversed the convictions and remanded the case for a new trial, based on its determination that the trial court erred when it denied Carter's request for a jury instruction on self-defense. Carter v. State, [Ms. CR-98-1976, June 30, 2000]843 So.2d 798 (Ala.Crim.App. 2000). The Alabama Supreme Court reversed that judgment, holding that the trial court properly denied the instruction on self-defense, because there was no evidence indicating that Carter was entitled to the charge. Ex parte Carter, [Ms. 1992225, May 25, 2001] 843 So.2d 804 (Ala. 2001). The supreme court remanded the cause to this court for further proceedings.
In addition to the issue regarding the denial of an instruction on self-defense, Carter argued on appeal that the trial court erred when it denied her motion for new trial, which was based on her claim that the jury's verdicts were inconsistent. Specifically, she argued on appeal, as she did in the post-trial proceedings in the trial court, that the conviction for the intentional murder of Artimese Johnson must be reversed, because it is inconsistent with the provocation-manslaughter verdict for the death of Marcus Cephus.
The facts are set forth in the previously issued appellate opinions in this case. Of particular relevance here is that Carter, her boyfriend, Trevas Bell, and her good friend, Artimese Johnson, were involved in an altercation with a group composed of Tamiko Smith, Sheri Baker, and Marcus Cephas. Cephas attempted to push Carter, and Bell began fighting with Cephas. As the two men tussled on the ground, Carter hit Cephas, and Cephas knocked Carter to the ground. Carter saw a 9mm pistol on the ground near her, and she picked it up and began firing. One of the State's witnesses testified that Carter was not aiming the gun at anyone, that she just fired shots in rapid succession. Carter shot and killed Cephas and her friend, Artimese Johnson. She also shot and wounded her boyfriend, Bell. The jury found Carter guilty of manslaughter in Cephas's death and guilty of murder in Johnson's death.
Carter argued to the trial court that the verdicts were inconsistent. She acknowledged that inconsistent verdicts do not require a reversal, with two exceptions: first, when a conviction on one count is an element of the second count, and the jury convicts only on the second count; and, second, when the record does not support the conviction. She argued that the verdicts indicated that the jury could not find any evidence of intent to kill, and that a new trial should be granted as to *Page 809 
the death of Artimese Johnson. Carter alleged that the evidence failed to establish any difference in intent between when she fired the weapon and hit Cephas, and when she fired the weapon and hit her friend, Johnson. On appeal, Carter notes that, as to the shooting of Johnson, the prosecution relied on the doctrine of transferred intent. She further argues that "it is inconceivable and impossible for the jury to convict her on the intentional murder of her friend, Artimese Johnson, if she is only guilty of the provocation manslaughter regarding Marcus Cephus." (Appellant's brief at p. 6.) The State argues on appeal that Carter intended to kill Cephas, and that her intent transferred to the resulting murder of Johnson. The State further contends that the jury's determination that legal provocation mitigated the killing of Cephas did not preclude the murder conviction with regard to the killing of Johnson, because her actions were nonetheless intentional with regard to Cephas.
We recently considered the law regarding inconsistent verdicts inDorsey v. State, [Ms. CR-97-1522, May 25, 2001] ___ So.2d ___
(Ala.Crim.App. 2001). In that case, the defendant was charged with the murder of two or more people pursuant to one scheme or course of conduct, and the jury returned verdicts of felony murder and capital murder as to the same victim. We stated:
 "`The general rule [in Alabama] is that there need be no rational compatibility or consistency between the verdicts on the several counts of an indictment. The exception to this rule is where the jury returns multiple convictions as to crimes which are mutually exclusive of each other.' Grikis v. State, 552 So.2d 187, 187 (Ala.Crim.App. 1989). Because Alabama has few published cases on this issue, we have looked to other jurisdictions.
 "As the Illinois Court of Appeals stated in People v. Becker, 315 Ill. App.3d 980, 248 Ill. Dec. 696, 734 N.E.2d 987 (2000):
 "`"Legally inconsistent verdicts cannot stand because they are unreliable. At a minimum, such verdicts suggest confusion or misunderstanding on the part of the jury." People v. Klingenberg, 172 Ill.2d 270, 281, 216 Ill. Dec. 813, 665 N.E.2d 1370
(1996). When the jury returns multiple guilty verdicts on knowing and reckless offenses for the same conduct, the verdicts are legally inconsistent, and the defendant is entitled to a new trial. People v. Hoffer, 106 Ill.2d at 195, 88 Ill. Dec. 20, 478 N.E.2d 335 (1985). In Hoffer, the supreme court reversed a defendant's murder and manslaughter convictions and remanded for a new trial, because the jury's multiple verdicts indicated that defendant acted in a knowing, intentional, and reckless manner for the same criminal conduct. Hoffer, 106 Ill.2d at 195, 88 Ill. Dec. 20, 478 N.E.2d 335. The court concluded that for a legally consistent verdict regarding the same criminal conduct, the jury was required to find that defendant acted either knowingly or recklessly, but that these mental states were mutually inconsistent and could not coexist. Hoffer, 106 Ill.2d at 195, 88 Ill. Dec. 20, 478 N.E.2d 335.
 "`In People v. Spears, 112 Ill.2d 396, 98 Ill. Dec. 9, 493 N.E.2d 1030 (1986), the supreme court expanded on Hoffer and held that where defendant's culpable conduct was essentially one act, the jury could not find that defendant possessed simultaneous knowing and reckless mental states. Spears, 112 Ill.2d at 407, 98 Ill. Dec. 9, 493 N.E.2d 1030. In that case, the defendant shot his wife and her friend within rapid succession. Five verdict *Page 810 
forms were provided: one for attempted murder of his wife, two for armed violence as to his wife and her friend, and two for reckless conduct as to his wife and her friend. The jury found the defendant guilty on all counts. The supreme court stated that, in resolving the question of whether guilty verdicts are consistent, the charging instrument, the jury instructions and the evidence at trial provide the essential framework for analyzing the consistency of jury verdicts. Spears, 112 Ill.2d at 405, 98 Ill. Dec. 9, 493 N.E.2d 1030.
"`. . . .
 "`The trial court's failure to send the jury back for further deliberations to resolve the inconsistent verdicts mandates a reversal and a new trial on all the inconsistent verdicts. . . .'"
Dorsey v. State, ___ So.2d at ___.
The State argues that because Carter's actions were intentional and because there was no provocation for the killing of Artimese Johnson, Carter's close friend, Carter was properly found guilty of the murder of Johnson. The issue before us is whether the doctrine of transferred intent can support a conviction for a greater offense with regard to the unintended victim than for the intended victim. We hold that it cannot.
Section 13A-6-2, Ala. Code 1975, provides that a person commits the crime of murder if, with the intent to cause the death of one person, he causes the death of that person or of another person. Thus, the statute includes within it the doctrine of transferred intent.
 "The doctrine was early recognized at common law. Sir Matthew Hale, in 1 History of the Pleas of the Crown
(published posthumously in 1736), said, at 466: To these may be added the cases above-mentioned, viz. if A. by malice fore-thought strikes at B. and missing him strikes C whereof he dies, tho he never bore any malice to C. yet it is murder, and the law transfers the malice to the party slain; the like of poisoning."
Harvey v. State, 111 Md. App. 401, 414, 681 A.2d 628, 634-35 (1996).
This court has repeatedly stated that the defendant's liability for the unintended consequences of a criminal act is in the same degree as it would have been had his aim been true and the intended target been injured or killed. For example, in Gilbert v. State, 20 Ala. App. 28,100 So. 566 (1924), this court stated:
 "The law is very certain that if a man kills one person, where the intent was to kill another, the guilt of the slayer is the same as if he had killed the person intended. In other words, the character of the offense, if any is the same in the eyes of the law that it would have been if the fatal shot had killed the identical person for whom it was intended. To state it differently, if the defendant fired the shot which resulted in the death of the deceased, he would be guilty or innocent of the offense charged, the same as if the fatal shot had killed Hopp, the person for whom it was designed."
20 Ala. App. at 29-30, 100 So. at 567.
This court later observed, in Gettings v. State, 32 Ala. App. 644,647, 29 So.2d 677, 680 (1947):
 "The decisions of our appellate courts are clear to the position that if a person, without legal excuse or justification, shoots at one individual and inadvertently kills another, he would be guilty of the same degree of unlawful homicide as if he had killed the object of his aim. It is also settled by the authorities that if he was acting in self-defense and *Page 811 
accidentally killed another he would be guilty of no crime."
We further stated:
 "[T]he guilt of an accused who, intending to injure one person, accidentally injures another, is to be determined as if the accused had injured his intended victim. `Not only is intent transferred, but also the degree of the crime and any defenses that would be valid if the intended victim had been hit.' Prosser, Transferred Intent, 45 Tex. L. Rev. 650, 653 (1967)."
Mathis v. State, 497 So.2d 231, 232 (Ala.Crim.App. 1986) (some internal quotation marks and citations omitted).
Legal scholars are in agreement with the foregoing principle. "So too if A aims at B with intent to kill under circumstances which would make him guilty of voluntary manslaughter of B, but he hits and kills C instead, A is guilty of voluntary manslaughter of C." Wayne R. LaFave Austin W. Scott, Jr., 1 Substantive Criminal Law § 312(d) (1986).
In Wharton's Criminal Law, the principle is further explained:
 "Under the common-law doctrine of transferred intent, a defendant, who intends to kill one person but instead kills a bystander, is deemed the author of whatever kind of homicide would have been committed had he killed the intended victim.
 "If, as to the intended victim, the homicide would have constituted murder, the defendant is guilty of murder as to the bystander who was the actual victim. Similarly, if the homicide would have constituted voluntary manslaughter as to the intended victim, the defendant is guilty of voluntary manslaughter as to the bystander who was the actual victim; and if the homicide, as to the intended victim, would have been justifiable, as in self-defense, the defendant is deemed the author of a justifiable homicide as to the bystander, at least in the absence of criminal negligence."
Charles E. Torcia, 2 Wharton's Criminal Law § 146 (15th ed. 1994) (emphasis added; footnotes omitted).
Based on the foregoing decisions of this court, and consistent with the analysis of noted legal scholars, we hold that, when the jury found Carter guilty of provocation manslaughter for the death of Marcus Cephas, it thereby limited Carter's culpability for the death of her friend, Artimese Johnson, to provocation manslaughter. When the intent was transferred from Cephas to Johnson, so too did the degree of the offense and any available defenses. Moreover, by finding Carter guilty of manslaughter and murder for the same criminal act, the jury essentially determined that she possessed two distinct, and mutually exclusive, mental states, and this determination rendered the verdicts legally inconsistent.
For the foregoing reasons, we are compelled to find that the trial court erred when it denied Carter's motion for a new trial, because the verdicts rendered by the jury are legally inconsistent and do not comport with the prior decisions of this court regarding the doctrine of transferred intent. As we noted in Dorsey v. State, supra, "[T]he trial court had a duty to reconcile the jury's inconsistent findings concerning Dorsey's intent." ___ So.2d at ___. We also quoted with approval Peoplev. Becker, 315 Ill. App.3d 980, 734 N.E.2d 987, 248 Ill. Dec. 696
(2000), in which the court held that, when a jury returns inconsistent verdicts, a new trial must be held on all of the inconsistent verdicts. We agree with the Illinois Supreme Court's explanation regarding the necessity for reversal and retrial in these *Page 812 
circumstances: "Where inconsistent verdicts are returned, a trial judge may not usurp the function of the jury by second-guessing `which of the two verdicts was intended by the jury and which was a result of some misconception.' (People v. Almo (1985), 108 Ill.2d 54, 63-64,90 Ill. Dec. 885, 483 N.E.2d 203.)" Neither may this court usurp the jury's function and second-guess the jury here.
Accordingly, we must reverse the convictions for provocation manslaughter and murder, and remand the cause for a new trial as to both Cephas and Johnson, or for other proceedings consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
McMillan, P.J., and Baschab, Shaw, and Wise, JJ., concur.