843 So.2d 812 (2002)
Ex parte State of Alabama.
(In re Triona Ann CARTER v. STATE of Alabama).
1010251.
Supreme Court of Alabama.
May 17, 2002.
*813 William H. Pryor, Jr., atty. gen., and Andy S. Poole, asst. atty. gen., for petitioner.
J. William Cole of Luker, Cole & Associates, L.L.C., Birmingham, for respondent.
MOORE, Chief Justice.
Triona Carter's case comes before us for the second time following a reversal of her convictions by the Court of Criminal Appeals. Carter v. State, 843 So.2d 807 (Ala. Crim.App.2001), opinion on remand from the Alabama Supreme Court. The issue now before us is whether, under the doctrine of transferred intent, a defendant can be convicted of an offense as to the unintended victim that is greater than the offense the defendant was convicted of with respect to the intended victim. The Court of Criminal Appeals answered the question in the negative. We reverse and remand.
As the Court of Criminal Appeals stated in its opinion on remand from this Court:
"The facts are set forth in the previously issued appellate opinions in this case. Of particular relevance here is that Carter, her boyfriend, Trevas Bell, and her good friend, Artimese Johnson, were involved in an altercation with a group composed of Tamiko Smith, Sheri Baker, and Marcus Cephas. Cephas attempted to push Carter, and Bell began fighting with Cephas. As the two men tussled on the ground, Carter hit Cephas, and Cephas knocked Carter to the ground. Carter saw a 9mm pistol on the ground near her, and she picked it up and began firing.... Carter shot and killed Cephas and her friend, Artimese Johnson. She also shot and wounded her boyfriend, Bell."
843 So.2d at 808.
The State charged Carter with capital murder as to both deceased victims because two or more persons were killed "by one act or pursuant to one scheme or course of conduct," § 13A-5-40(a)(10), Ala. Code 1975. The jury was charged on the capital offense, but it was also instructed on the lesser included offenses of intentional murder, provocation manslaughter, and reckless manslaughter. The jury was told to consider the charges separately, and it returned verdicts convicting Carter of intentional murder for the death of Artimese Johnson and provocation manslaughter for the death of Marcus Cephas.
Carter appealed; the Court of Criminal Appeals reversed the judgment and remanded the case for a new trial on the grounds that the trial court had erroneously refused to charge the jury on self-defense. Carter v. State, 843 So.2d 798 (Ala. Crim.App.2000). This Court reversed the judgment of the Court of Criminal Appeals and remanded the case, concluding that the evidence indicated that, at the time of the shooting, neither Carter nor her boyfriend was at risk of death or serious bodily injury and that Carter had the ability to retreat, thus negating any claim of self-defense. Carter v. State, 843 So.2d 804 (Ala.2001).
On remand from this Court, the Court of Criminal Appeals again reversed the convictions and remanded the case for a new trial. It reversed on the ground that the verdicts were inconsistent because "the doctrine of transferred intent can[not] support a conviction for a greater offense with *814 regard to the unintended victim than for the intended victim." 843 So.2d at 810.
The Court of Criminal Appeals correctly observed that Alabama appellate courts have repeatedly held that "the defendant's liability for the unintended consequences of a criminal act is in the same degree as it would have been had his aim been true and the intended target been injured or killed." Carter, 843 So.2d at 810 (opinion on remand). This holding was originally justified "`[u]nder the common-law doctrine of transferred intent, [where] a defendant, who intends to kill one person but instead kills a bystander, is deemed the author of whatever kind of homicide would have been committed had he killed the intended victim.'" Carter, 843 So.2d at 811, quoting Charles E. Torcia, 2 Wharton's Criminal Law § 146 (15th ed.1994). Section 13A-6-2(a)(1), Ala.Code 1975, reiterates the doctrine in its definition of murder. The statute provides, in pertinent part, that "[a] person commits the crime of murder if ... [w]ith intent to cause the death of another person, he causes the death of that person or of another person...." (Emphasis added.)
The Court of Criminal Appeals interpreted the doctrine of transferred intent to mean that "[w]hen the intent was transferred from Cephas to Johnson, so too did the degree of the offense and any available defenses" and thus that "when the jury found Carter guilty of provocation manslaughter for the death of Marcus Cephas, it thereby limited Carter's culpability for the death of her friend, Artimese Johnson, to provocation manslaughter." 843 So.2d at 811. Because, it reasoned, "the jury essentially determined that [Carter] possessed two distinct, and mutually exclusive, mental states" for one course of conduct, the Court of Criminal Appeals held that the verdicts were legally inconsistent. Id. We disagree.
In Hammond v. State, 497 So.2d 558, 563 (Ala.Crim.App.1986), the Court of Criminal Appeals explicitly adopted the guidelines of the United States Supreme Court in Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), concerning the review of inconsistent verdicts by an appellate court. This Court granted certiorari review, then quashed the writ. In Dunn, the Supreme Court stated:
"[C]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment....
". . . .
"That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."
284 U.S. at 393-94, 52 S.Ct. 189 (citations omitted). Thus, "[t]he general rule is that there need be no rational compatibility or consistency between the verdicts on the several counts of an indictment. The exception to this rule is where the jury returns multiple convictions as to crimes which are mutually exclusive of each other." Grikis v. State, 552 So.2d 187, 187 (Ala.Crim.App.1989).
If the verdicts did indeed reflect that Carter possessed two distinct mental states regarding the killing of Cephas and Johnson, then the Court of Criminal Appeals would be correct in determining that the verdicts are inconsistent and that that fact requires reversal. However, the State contends, and we must agree, that the Court of Criminal Appeals has misunderstood that a conviction for provocation manslaughter implies a less culpable state of mind by the perpetrator than a conviction for intentional murder.
*815 Section 13A-6-3(a)(2), Ala.Code 1975, provides that a person commits provocation manslaughter if he
"causes the death of another person under circumstances that would constitute murder under Section 13A-6-2 [intentional murder]; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to assert itself."
(Emphasis added.) Thus, when the jury finds a person guilty of provocation manslaughter, the person is deemed guilty of intentional murder ("under circumstances that would constitute murder under § 13A-6-2"), but the conviction is reduced to manslaughter because a legally recognized mitigating circumstance (provocation) has been found to exist.[1]
The Commentary to § 13A-6-3(a)(2) explains that "the law, recognizing the frailties of man and his loss of reason and control in certain provocative situations overlooks or forgives the `malice' and mitigates the homicide from murder to a lesser grade." (Emphasis added.) The "malice," or intent, is not negated, but merely forgiven because of the circumstances. As the Court of Criminal Appeals has itself observed in the past: "Heat-of-passion provocation implies that [the defendant's] actions were intentional but that, because of the circumstances, they were excused by law." McGriff v. State, [Ms. CR-97-0179, September 29, 2000] ___ So.2d ___, ___ (Ala.Crim.App. 2000). In fact, as the Wisconsin Supreme Court has succinctly stated: "[M]any such homicides [i.e., those resulting from heat-of-passion provocation] do involve an actual intent to take the life of another. This very intent is typically the result of the heat of passion." State v. Lee, 108 Wis.2d 1, 9, 321 N.W.2d 108, 112 (1982). In sum, provocation does not negate intent.[2]
Thus, the jury did not find two distinct mental states for one course of conduct: they found that Carter had the intent to kill, but that in the case of Cephas, her guilt was mitigated by the provocation brought on by his actions toward her. The intent that "transferred" was not lessened by this provocation; only Carter's guilt in the eyes of the law was lessened because of the factual circumstances. Because this is not a case where the verdicts are "mutually exclusive of each other," Grikis, 552 So.2d at 187, a reversal is not warranted.
It is worth noting that the Commentary to § 13A-6-2 strongly discourages any use of the doctrine of transferred intent:
"Under the Criminal Code, there is no need for the anachronistic rule of `transferred intent' ....

*816 "The concept may serve a useful purpose in the tort field but has no proper place in criminal law. [Transferred intent] is obviously only a fiction, or a legal conclusion, to accomplish the desired result of liability.... [I]n the field of crime this concept has the vice of being a misleading half-truth, often given as an improper reason for a correct result ....
"Where the actor intentionally or knowingly does an act that is highly likely to cause death to another person, and as a natural and direct result another person is killed, though not the person subjectively intended to be killed..., the actor is guilty of murder ... because he intended `to cause the death of another person ....'"
The jury verdicts in this case yield precisely this result: the jury found that Carter had acted intentionally to kill one person and did kill that person, so she was found guilty of intentional murder for the death of Artimese Johnson. No provocation existed to lessen the guilt as to that murder, unlike Cephas's death. The intentional murder remained just thatintentionalfor the killing of Johnson. Who Carter intended to kill made no difference concerning her culpability for the crime. Thus, even if Carter's intent in killing Cephas did not "transfer" to the killing of Johnson, it remained the same for a single course of conduct in which two people were killed, and we would have to say that the jury did not render inconsistent verdicts based on Carter's intent.
Thus, the Court of Criminal Appeals overstates the law when it states, as it did in this case and as it has before, that "[n]ot only is intent transferred, but also the degree of the crime and any defenses that would be valid if the intended victim had been hit," Mathis v. State, 497 So.2d 231, 232 (Ala.Crim.App.1986), quoting Prosser, Transferred Intent, 45 Tex. L.Rev. 650, 653 (1967). There was no transfer of degree of guilt in this case because separate findings on the factual circumstances warranted separate degrees of guilt, which was borne out by the separate verdicts returned by the jury.[3]
Even if the jury did not use this rationale to arrive at its result, the fact remains that the verdicts were not inconsistent; therefore a reversal was not warranted. Because we find that there existed no fundamental inconsistency in the verdicts, there is no need to reach the State's alternative argument that the Court of Criminal Appeals should have reversed only one of the verdicts, rather than both.
For the foregoing reasons, the Court of Criminal Appeals erred in reversing Carter's convictions. Accordingly, we reverse its judgment and we remand the case for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, BROWN, and STUART, JJ., concur.
HARWOOD, J., concurs in part and dissents in part.
LYONS, JOHNSTONE, and WOODALL, JJ., dissent.
HARWOOD, Justice (concurring in part and dissenting in part).
I concur with that portion of the main opinion that concludes that a jury verdict mitigating a homicide that would otherwise *817 comprise all of the elements of murder to heat-of-passion manslaughter based on lawful provocation does not indicate that the jury found that the homicide was not intentional. Rather, the intent to kill the victim is accorded a degree of forgiveness because it arose out of "a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to assert itself." § 13A-6-3(a)(2), Ala.Code 1975. The resulting intent to cause the death of the provoking party is no less real simply because it was precipitated by the heat of the passion excited by the provocation.
I disagree, however, with the further conclusion of the main opinion that the jury verdicts in this case do not represent "convictions as to crimes which are mutually exclusive of each other," under the rule of Grikis v. State, 552 So.2d 187, 187 (Ala.Crim.App.1989). 843 So.2d at 814. It is undisputed that after Marcus Cephasa 5-foot-10-inch, 232-pound malestruck Triona Ann Cartera 5-foot, 99-pound pregnant femalein the face, knocking her to the ground, she picked up a pistol lying on the ground where she had fallen and began firing it in rapid succession. Cephas was shot twice, the fatal wound being to his back; Carter's good friend, Artimese Johnson, was shot fatally once in her chest; and Carter's boyfriend, Trevas Bell, received a gunshot wound to his hip. There is no evidence as to which of the several shots fired in quick succession struck which victim. That is to say, it would be mere speculation to surmise that, for example, the first and second shots hit Cephas, as opposed to the first and third, second and third, etc.
The trial judge instructed the jury that in order for the State to prove that the respective deaths of Cephas and Johnson constituted murder, it had to prove that "the defendant at the time was not lawfully provoked to do the act which caused the death of the deceased by a sudden heat of passion." The jury was conversely instructed with respect to the crime of manslaughter, that a necessary element of that offense was that the defendant had been "lawfully provoked to do the act which caused the death of the deceased ...."
One of the witnesses for the prosecution testified that Carter picked up the gun and "she was like pow, pow, pow, just waiving the gun and shooting"; it is otherwise clear from the record that Carter fired the several rounds in such rapid succession that they constituted a fusillade. Because, as noted, no one is able to identify which of the succession of shots hit which of the three victims, "the act" involved necessarily was the cluster of shots all fired with the same intent and under the same provocation, as opposed to several separate and discrete acts, each assignable to a particular victim. No one could reasonably argue that Carter's intent in firing the shots, or her excited state of mind, inflamed by a sudden heat of passion, could be different as to any of the shots fired. No one contends that the first shot was discharged in the heat of passion but that one or more of the subsequent shots were fired only after that passion had subsided to a nonmitigating level. If the shot that killed Cephas was fired while Carter was in the throes of a heat of passion caused by a lawfully recognized provocation, then the shot that struck and fatally wounded Johnson likewise would have been the product of that same state of mind.
I agree with the analysis of the Court of Criminal Appeals that "when the jury found Carter guilty of provocation manslaughter for the death of Marcus Cephas, it thereby limited Carter's culpability for the death of her friend, Artimese Johnson, to provocation manslaughter. When the intent was transferred from Cephas to *818 Johnson, so too did the degree of the offense and any available defenses." 843 So.2d at 811. In structuring its verdicts as it did, "the jury return[ed] multiple convictions as to crimes which are mutually exclusive of each other." Grikis, 552 So.2d at 187.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. The main opinion is mistaken in that it isolates provocation by the victim as the critical element of the heat-of-passion mitigation and does not recognize, but instead discounts to the point of virtual elimination, the heat-of-passion itselfthe mental disturbance in the defendantas the critical element of the mitigation. That is, the main opinion concentrates on the fault or lack of fault in the two victims to the virtual exclusion of the mitigating mental state in the defendant. The analysis in the main opinion, reduced to its essence, is that, because Cephas provoked the defendant, Cephas's killing was only manslaughter, but, because the defendant's friend Johnson did not provoke the defendant, Johnson's killing was murder.
The correct law is that the heat-of-passion itselfthe mental disturbance in the defendantis the critical element of the mitigation, and the "lawful provocation" by the victim is merely the condition the law imposes on its willingness to recognize the mitigating effect of heat-of-passion. Contrary to the analysis by the main opinion, the law does acknowledge that heat-of-passion qualifies and mitigates the mental state of intent itself.
The well-settled law is conveniently summarized in the Alabama Law Institute's pattern criminal jury instructions:
"Lawful provocation means that the defendant was moved to do the act which caused the death of the deceased by a sudden heat of passion and before there had been a reasonable time for the passion to cool and reason to reassert itself. The defendant must have been provoked at the time he did the act; that is, he must have been deprived of self-control by the provocation which he received. The state of mind must be such that the suddenly excited passion suspends the exercise of judgment, but it is not required that the passion be so overpowering as to destroy volition. A killing in sudden passion, excited by sufficient lawful provocation, is manslaughter only. The law presumes that the passion disturbed the defendant's reasoning and led him to act regardless of the admonition of law." (Emphasis added.)
Alabama Pattern Jury Instructions Criminal, CJI # 5, Murder (Intentional Murder with Provocation Defense) (3d ed.1994). The expressions critical to the mitigation are "sudden heat of passion," "before there had been a reasonable time for the passion to cool and reason to reassert itself," "deprived of self-control," "suspends the exercise of judgment," and "disturbed the defendant's reasoning."
The statutes and some typical cases to this effect follow. Section 13A-6-2, Ala. Code 1975, provides, in pertinent part:
"(a) A person commits the crime of murder if:
"(1) With intent to cause the death of another person, he causes the death of that person or of another person; ...
". . . .
"(b) A person does not commit murder under subdivisions (a)(1) ... of this section if he was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself. The burden of injecting the *819 issue of killing under legal provocation is on the defendant, but this does not shift the burden of proof." (Emphasis added.)
Section 13A-6-3, Ala.Code 1975, provides, in pertinent part:
"(a) A person commits the crime of manslaughter if:
". . . .
"(2) He causes the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself." (Emphasis added.)
Farrior v. State, 728 So.2d 691, 697 (Ala. Crim.App.1998), approved a jury instruction on heat-of-passion manslaughter:
"`Now, a killing in a sudden passion excited by sufficient lawful provocation, as I have said is manslaughter. Not because the law supposes this passion made the defendant unconscious about what he was about to do and strip[ped] the act [of] killing of the intent to commit the killing. But it is because the law says passion disturbed the sway of the defendant's reasoning.'" (Emphasis added.)
Bean v. State, 492 So.2d 647, 650 (Ala. Crim.App.1986), approved another jury instruction on heat-of-passion manslaughter:
"`[T]he question [is] whether the defendant "was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself."'" (Emphasis added.)
Nelson v. State, 511 So.2d 225, 240 (Ala. Crim.App.1986), held:
"[A] sudden transport of passion, caused by adequate provocation, if it suspends the exercise of judgment, and dominates volition, so as to exclude premeditation and a previously formed design, although it does not entirely dethrone reason, is sufficient to reduce the killing to manslaughter." (Emphasis added.)
At trial in the case before us, the State did not claim, and did not prove, that the defendant actually intended to kill her friend Johnson. Rather, for the element of intent in the death of Johnson, the State relied entirely upon the defendant's intent to kill her antagonist Cephas. The jury found that the defendant shot Cephas in the disturbed mental state of heat-of-passion, caused by Cephas's "lawful provocation." Only this state of mind is available for consideration in a determination of the degree of the defendant's guilt in killing her friend Johnson. The virtually simultaneous shooting of the defendant's friend Johnson necessarily occurred "before there had been a reasonable time for the passion to cool and reason to reassert itself."
"The general rule is that there need be no rational compatibility or consistency between the verdicts on the several counts of an indictment. The exception to this rule is where the jury returns multiple convictions as to crimes which are mutually exclusive of each other." (Emphasis added.)
Grikis v. State, 552 So.2d 187, 187 (Ala. Crim.App.1989). A manslaughter conviction as to Cephas and a murder conviction as to Johnson, both dependent on the same mental state, or mens rea, are mutually exclusive of each other.
Accordingly, the Court of Criminal Appeals correctly reversed the defendant's *820 conviction for murdering Johnson. We should affirm.
LYONS and WOODALL, JJ., concur.
NOTES
[1] Section 13A-6-2(b) does not contradict this principle. It states:

"A person does not commit murder under subdivisions (a)(1) or (a)(2) of this section if he was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to assert itself."
This provision is merely the mirror image of § 13A-6-3(a)(2), explaining that a "heat-of-passion" killing will not be considered murder. It does not, of course, mean that the existence of legal provocation negates any intent on the part of the defendant.
[2] Provocation addresses motive rather than intent. For public policy reasons, some motives for killing are deemed criminally less culpable than other motives. Provocation manslaughter is one of those, probably because the people sympathize with, but do not condone, the response. In contrast, self-defense is condoned because it is a complete defense to a killing. Motive, while sometimes confused with intent, is not one of the legal elements of the crime of murder.
[3] Saying that the provocation defense in this case transfers along with the intent has the effect of changing the facts of the case, because Johnson did not provoke Carter, and while transferred intent may be a legal fiction designed to reach just results, the fiction should not be so extended in any given factual situation that it defies common sense.