Rel: December 9, 2022

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

———————————————

## 1210322

———————————————

## Ex parte Aaron Cody Smith

## PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS

## (In re: Aaron Cody Smith

## v.

## State of Alabama)

## (Montgomery Circuit Court, CC-16-1397; Court of Criminal Appeals, CR-19-0428)

1210322

MITCHELL, Justice.

WRIT QUASHED.  NO OPINION.

Sellers, Mendheim, and Stewart, JJ., concur.

Bryan, J., concurs specially, with opinion.

Mitchell, J., concurs specially, with opinion, which Bolin, J., joins.

Shaw and Wise, JJ., recuse themselves.

2

BRYAN, Justice (concurring specially).

I concur in the decision to quash the writ. However, I briefly note the failure of Aaron Cody Smith's counsel "to challenge the adequacy of specific-intent evidence [at trial,] in a posttrial motion, on direct appeal, or in his certiorari petition." ___ So. 3d at ___ (Mitchell, J., concurring specially). That omission appears to be problematic and perhaps raises a serious question about the effectiveness of Smith's counsel.

1210322

MITCHELL, Justice (concurring specially).

I concur in the decision to quash the writ of certiorari because Aaron Cody Smith has failed to preserve any viable legal theories for our review. That said, after reviewing the parties' briefs and the Court of Criminal Appeals' unpublished memorandum issued below in Smith v. State (No. CR-19-0428, Feb. 4, 2022), ___ So. 3d ___ (Ala. Crim. App. 2022) (table), I have serious concerns about Smith's conviction and the adequacy of his counsel. I write to explain those concerns and to note that Smith may be able to seek postconviction relief under Rule 32, Ala. R. Crim. P.

## I.

It is rare to read an appellate-court decision that simultaneously affirms a defendant's conviction while also describing as "largely undisputed" a factual record that seems more consistent with the defendant's innocence than his guilt. But the Court of Criminal Appeals' memorandum in this case does just that.

According to the Court of Criminal Appeals, the undisputed evidence presented at trial tells the following story.[1] Smith was an officer with the Montgomery Police Department and was working night patrol in a high-crime area of Montgomery on February 25, 2016. Smith's supervisor had ordered him "to stop anything and everything that moves in [Smith's] district" in an effort to end a string of property crimes that had been taking place during Smith's shift.

Around 3:00 a.m., Smith drove past a man named Gregory Gunn. As soon as Gunn noticed Smith's marked police car, he began walking away quickly, with his hands concealed in his pockets. Smith got out of his car and instructed Gunn to take his hands out of his pockets and to place them on the hood of the vehicle.[2] Gunn complied, and Smith began

---

[1]Given the procedural posture in which this case comes to us, this Court is not in a position to conduct a de novo review of the full trial record. Some additional facts and procedural history can be found in this Court's prior opinion, Ex parte Smith, 282 So. 3d 831, 837 (Ala. 2019). I mention those additional facts and history only to the extent that they are relevant here.

[2]The Court of Criminal Appeals does not mention this fact in its memorandum, but this Court noted in a prior opinion in this case that Gunn was wearing a dark hoodie at the time, which Smith testified matched the clothing worn by an individual who had dropped a stolen laptop while running from Smith the previous week. Ex parte Smith, 282 So. 3d 831, 837 (Ala. 2019).

to perform a pat-down to ensure that Gunn was not armed. When Smith moved his right hand toward the front of Gunn's waistband, he felt a hard object that he believed could be a gun. Before Smith could remove the object, Gunn rotated toward Smith and "swatted" his hand away. Smith pushed Gunn against the car to prevent him from "reach[ing] whatever it was that he had in his waistband" and told Gunn that he was under arrest.

Gunn began shouting at Smith, at which point Smith pulled out his Taser and called for backup. After he had finished radioing for backup, Smith holstered his Taser and put his hand back on Gunn's waist. At that point, Gunn sidestepped toward the front of the car, shoved Smith, and took off running. Smith pursued Gunn on foot, instructing Gunn to "[s]how me your hands and get on the ground," but Gunn ignored that order and continued to flee.

As he was fleeing, Gunn put his hands in his pockets, near the area of his pants where Smith had felt the hard object. Fearing that Gunn was about to reach for a weapon, Smith deployed his Taser on Gunn. The Taser caused Gunn to falter, but it did not stop him from running away. Smith discharged his Taser a second time, but again it was ineffective.

6

After the third discharge, Gunn said: "Fuck your Taser, Bitch." Smith discharged his Taser a fourth and final time -- again without effect -- and then reholstered it.

Smith chased Gunn as Gunn ran up the driveway of a nearby house, where a family was asleep inside. Smith attempted to subdue Gunn by using his collapsible baton, but Gunn continued to run, heading up the driveway and onto the front porch of the house. When Gunn reached the porch, he yelled: "All right, Police[!]" -- a statement that Smith interpreted as a threat meaning: "All right … I've got something for you." Gunn then moved to a dark area of the porch and grabbed a "clanking" metal object, which turned out to be a painter's pole covered with yellow paint. Gunn "bladed toward" Smith, brandishing the pole in his hand.

When Smith saw Gunn charging toward him, he holstered his baton, retrieved his firearm, and began backing away. Gunn raised the pole and lunged at Smith, who was backed into a support column and felt "trapped" on the porch. "Because Gunn had armed himself and because Smith 'feared that [his] life was in jeopardy, as well as any other person that came in contact with Mr. Gunn, that their life was in jeopardy,'" Smith pulled out his firearm and "'began firing toward the yellow pole

and [Gunn's] hand.'" Gunn stumbled backward and fell to the ground. Smith went over to check on him and called for medical assistance, but the medics were unable to save Gunn's life.

An autopsy confirmed, as far as possible, Smith's version of events. It revealed that Gunn had been hit with multiple bullets that were concentrated on and around his weapon arm, that he had been on cocaine at the time of his death, and that there were yellow paint chips embedded in the hand that Smith had identified as Gunn's weapon hand.

## II.

The shooting inspired numerous protests, which -- like the shooting itself -- received "frequent and widespread media coverage." Ex parte Smith, 282 So. 3d 831, 834 (Ala. 2019). As a result, after Smith was arrested and indicted for murder, this Court ordered the case to be transferred to another venue. Id. at 844. He was ultimately tried in the Dale Circuit Court.

The jury was instructed on both intentional murder, § 13A-6-2, Ala. Code 1975, and heat-of-passion manslaughter, § 13A-6-3(a)(2), Ala. Code 1975, as a lesser-included offense. The jury returned a verdict of "guilty of [heat-of-passion] Manslaughter," which "indicated that the jury found

8

the defendant, [Smith], was guilty of intentionally causing the death of Mr. Gunn," but that the intent was less culpable because it was "caused in the sudden heat of passion caused by provocation recognized by law." C. 622-23.

## III.

Because of the posture in which this case comes to us, this Court is not in a position to conduct a de novo review of the full trial record. But if it is true, as the Court of Criminal Appeals stated, that the facts described above are "largely undisputed," then it is difficult to understand how a reasonable, properly instructed jury could have convicted Smith.

As noted above, the jury was charged on only two crimes: intentional murder and heat-of-passion manslaughter, both of which required the prosecution to prove beyond a reasonable doubt that Smith acted with the specific intent to kill Gunn. § 13A-2-2(1), Ala. Code 1975. Yet the record, as described in the memorandum below, does not seem to indicate -- let alone establish beyond reasonable doubt -- that Smith's specific intent was to kill Gunn rather than to disable Gunn's attack. If

anything, the facts recited by the Court of Criminal Appeals strongly suggest the opposite conclusion.

According to the Court of Criminal Appeals' summary of the evidence, Smith exhausted every available method of nonlethal force in his attempt to subdue Gunn and resorted to discharging his firearm only after all of those efforts had failed and only when Gunn was coming at Smith with a weapon (while trespassing on the front porch of an occupied house).  When Smith finally did fire at Gunn, he aimed "toward the yellow pole and [Gunn's weapon] hand," rather than trying to hit Gunn's vital organs.  In addition, another officer confirmed that, once Gunn was incapacitated, Smith went over to Gunn's side to check on him -- at obvious risk to Smith's own physical safety -- and called for emergency medics to assist Gunn.  Those facts, if accurate,[3]  seem far more

_____

[3]The State does not argue that the Court of Criminal Appeals misstated or mischaracterized the facts.  The State does raise an additional point not discussed in the memorandum below, which is that -- according to the State -- Smith's descriptions of his encounter with Gunn "changed wildly" over time.  State's brief at 43.  But the only examples the State provides of such "wild[]" changes are that: (1) Smith initially recounted having wrestled with Gunn but then, at his immunity hearing, stated that he did not wrestle with Gunn; (2) Smith stated during his immunity hearing that Gunn swatted his hand during the pat-down, but had not mentioned that detail in his earlier statements; and (3) Smith alternated between describing Gunn's actions with the pole as

consistent with a specific intent to disable Gunn's attack than with a specific intent to kill.

Of course, Smith may have known that firing at Gunn was <u>likely</u> to kill him, but both intentional murder and heat-of-passion manslaughter are intent-based crimes, not knowledge-based crimes. It was therefore not enough for the State to prove that Smith was aware that shooting Gunn could or would have killed him; rather, the prosecution was required to prove beyond reasonable doubt that Smith's <u>conscious</u> <u>purpose</u> was to kill Gunn. <u>See</u> § 13A-2-2(1) (defining what it means to commit a crime "intentionally"); <u>see also</u> <u>Varnado v. State</u>, [Ms. CR-18-0673, July 9, 2021] ___ So. 3d ___, ___ (Ala. Crim. App. 2021) (McCool, J., concurring in part and dissenting in part) (emphasizing that specific intent to shoot does not necessarily imply specific intent to kill). The

---

"sw[i]ng[ing] it" (first statement), "raising it" (second statement), and "coming at him" with it (immunity hearing). Only the first example involves an actual inconsistency -- and in that instance, Smith revised his story in a way that was <u>less</u> favorable to his defense, not more. And even on the version of events most favorable to the State, it appears as though Smith's actions were at least as consistent with a specific intent to disable Gunn's attack as with specific intent to kill. <u>Cf.</u> <u>Estate of Logan</u> <u>v. City of S. Bend</u>, 50 F.4th 614 (7th Cir. 2022) (Easterbrook, J.).

11

evidence described by the Court of Criminal Appeals does not indicate that the prosecution met that burden.

Yet Smith's briefs to the Court of Criminal Appeals and his certiorari petition to this Court contain no mention of the adequacy of intent-based evidence. Instead, Smith's briefs and petition focus on the adequacy of <u>provocation</u> evidence: according to Smith's appellate briefs and petition, the problem with his conviction was that "there had been <u>no evidence of provocation</u>" submitted to the jury. Petition at 4 (emphasis in original). In other words, Smith argues that the jury was wrong to hold that Gunn provoked Smith's shooting.

There are two glaring problems with Smith's no-evidence-of-provocation theory. The first is that it seems obvious that the jury <u>did</u> hear evidence of provocation, and plenty of it. As just described, the evidence presented at trial shows that Gunn wielded a metal pole against Smith. It is difficult to imagine conduct more "provoking" than attacking or attempting to attack another person with a weapon.

The second problem with Smith's no-evidence-of-provocation theory is that the finding of provocation <u>helped</u> Smith. Provocation is the only difference between the crime of intentional murder and the lesser-

included crime of heat-of-passion manslaughter; it serves as a mitigating factor that reduces what would otherwise be murder to the less serious offense of manslaughter.[4]  In other words, if not for the jury's determination that Gunn provoked the shooting, Smith would have been convicted of a <u>more</u> serious crime and would have been eligible for a <u>longer</u> term of imprisonment.  It is unclear why Smith focused his appeal on a theory that, even if true, could not help him.

The most puzzling aspect of Smith's representation, however, is the total failure to challenge the adequacy of specific-intent evidence in a posttrial motion, on direct appeal, or in his certiorari petition.  If the

---

[4]Smith seems to assume (without explanation or citation to any authority) that provocation is an "element" of manslaughter and that, accordingly, the State bore the burden of proving provocation beyond reasonable doubt.  I am unaware of any authority supporting that assumption.  Provocation was not an element of voluntary manslaughter at common law, <u>see</u> <u>People v. Mendoza</u>, 468 Mich. 527, 536, 664 N.W.2d 685, 690 (2003), and nothing in the structure or language of Alabama's manslaughter statute indicates that our Legislature has altered the common-law role of provocation, <u>see</u> § 13A-6-3, Ala. Code 1975 (defining the elements of heat-of-passion manslaughter as coextensive with the elements of murder, and <u>then</u> describing provocation as an "except[ion]" to the rule that those elements constitute murder).  It also would be unusual for a criminal statute to assign to the prosecution the burden of proving that a mitigating factor applies, since it is the defendant, not the prosecution, whose interests are served by a finding of mitigation.

Court of Criminal Appeals' summary of the record is accurate, then Smith's failure to litigate the adequacy of specific-intent evidence is, frankly, bizarre. It may be the most astonishing failure I've ever seen in a criminal case.[5]

The filings below suggest one possible explanation for that failure: Smith's posttrial and appellate counsel seem to have believed that a conviction for heat-of-passion manslaughter did not require the jury to find that Smith committed any "intentional act." C. 661-62; see also C. 646 (arguing that the conviction for "manslaughter rather than murder … show[s] that the Defendant's [sic] did not act with intent"). That assumption, however, is plainly incorrect. Our caselaw could not be clearer in rejecting the "misunderst[anding] that a conviction for

_____

[5]Smith's merits brief before this Court did -- for the first time -- challenge the lack of specific-intent evidence, but by that point it was too late. As the State's response brief points out, Smith repeatedly failed to raise a specific-intent challenge in the proceedings below and in his petition, and he has therefore forfeited the issue. While there are rare circumstances in which appellate courts have overlooked or forgiven a party's failure to preserve an issue, see 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2588 (3d ed. 2008), Smith never argued in either his opening brief or reply that such an exception to our normal practice would be appropriate here. In fact, Smith did not file a reply brief at all (another shocking failure, especially in a case of this magnitude).

provocation manslaughter implies a less culpable state of mind by the perpetrator than a conviction for intentional murder." Carter v. State, 843 So. 2d 812, 814 (Ala. 2002). As Carter emphasized -- and as the text of §§ 13A-6-2 and -3 make clear -- a conviction for heat-of-passion manslaughter requires the same state of mind as a conviction for intentional murder: specific intent to kill. Id. at 815. That Smith's attorneys were apparently unaware of Carter's holding (and of the plain text of the Criminal Code) raises serious reasons to doubt the adequacy of his legal counsel.

There are other reasons to be concerned too. For example, Smith's attorneys never argued in a posttrial motion or on direct appeal that the prosecution failed to meet its burden of proving that Smith did not act in self-defense, even though the fact pattern described above seems to indicate that -- leaving aside the specific-intent issue -- Smith's actions were consistent with self-defense under § 13A-3-23, Ala. Code 1975.[6]

---

[6]The State's brief to this Court argues that Smith could not have prevailed on a self-defense theory because the jury was "presented with the testimony of Alabama Law Enforcement Agency Special Agent Anthony Green that Smith did not have reasonable suspicion to stop Gunn under Terry v. Ohio, 392 U.S. 1 (1968)," and the jury reasonably concluded, based on that testimony, that Smith was the initial aggressor. State's brief at 44. But the State's argument on this point highlights yet

1210322

In light of these apparent deficiencies, Smith may be eligible for postconviction relief. Rule 32 of the Alabama Rules of Criminal Procedure allows an individual convicted of a criminal offense to seek a new trial or other appropriate relief if his original conviction was the

---

another problem with the proceedings below: expert witnesses are not permitted to instruct jurors on questions of law or to "'give an opinion that constitutes a legal conclusion.'" DISA Indus., Inc. v. Bell, 272 So. 3d 142, 153 (Ala. 2018) (citation omitted). Moreover, it appears from the State's description that Green's testimony may have misstated the law. A police officer is justified in conducting a Terry stop so long as he has reasonable suspicion of unlawful conduct. State v. Hill, 690 So. 2d 1201, 1205 (Ala. 1996). Factors commonly considered in assessing the reasonableness of a Terry stop include: whether the stopped individual matches the description of a suspected criminal, United States v. Gibson, 64 F.3d 617, 622 (11th Cir. 1995); whether the area where the stop occurred was a high-crime area or one "of expected criminal activity," Illinois v. Wardlow, 528 U.S. 119, 124 (2000); whether the suspicious activity occurred "late at night or early in the morning," United States v. McHugh, 639 F.3d 1250, 1257 (10th Cir. 2011), accord, United States v. Davis, 710 F. App'x 805, 806 (11th Cir. 2017); whether the individual engaged in "unprovoked flight upon noticing the police," Wardlow, 528 U.S. at 124; and whether the individual made furtive gestures or suspicious movements, such as concealing his hands or an object in his clothing, Ex parte Kelley, 870 So. 2d 711, 721 (Ala. 2003). It appears -- based on the facts described in the memorandum below and in this Court's prior opinion -- that all of those criteria were satisfied here: Gunn was (1) wearing clothing that matched the clothing of a known criminal, (2) while walking around a high-crime area, (3) in the middle of the night, and then (4) sped up in the opposite direction as soon he noticed Smith's police car, while (5) concealing his hands in his clothing. If those facts are accurate, then Smith's Terry stop was likely reasonable as a matter of law.

16

product of a constitutional violation.  See Rule 32.1, Ala. R. Crim. P. Because the United States Supreme Court has held that the Sixth and Fourteenth Amendments to the federal Constitution guarantee a right to effective assistance of counsel in criminal cases -- both at the trial stage, Gideon v. Wainwright, 372 U.S. 335 (1963), and during the first appeal, Evitts v. Lucey, 469 U.S. 387, 396 (1985) -- Rule 32.1 provides defendants the opportunity to obtain relief if they can state a claim of ineffective assistance of trial or appellate counsel.  See Ex parte Walker, 800 So. 2d 135, 138 (Ala. 2000).  Based on the record before us, it appears that Smith may be a candidate for postconviction relief under Rule 32.  He may also be eligible to receive the assistance of court-appointed counsel under Rule 32.7(c), Ala. R. Crim. P.

IV.

Because Smith has failed to preserve any viable legal theories for this Court's review, I must concur in the decision to quash writ.  But since the memorandum below raises obvious doubts regarding Smith's conviction and the adequacy of his counsel, I believe he may be eligible for postconviction relief.

Bolin, J., concurs.